(Slip Opinion) OCTOBER TERM, 2012 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* DAVILA

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 12–167.   Argued April 15, 2013—Decided June 13, 2013

Federal Rule of Criminal Procedure 11 governs guilty pleas. Rule 11(c)(1) instructs that "[t]he court must not participate in [plea] discussions," and Rule 11(h) states that a "variance from the requirements of th[e] rule is harmless error if it does not affect substantial rights." Rule 52(a), which covers trial court errors generally, similarly prescribes: "Any error . . . that does not affect substantial rights must be disregarded."

Respondent Davila, while under indictment on multiple tax fraud charges, wrote to the District Court, expressing dissatisfaction with his court-appointed attorney. Complaining that his attorney offered no defensive strategy, but simply advised him to plead guilty, Davila requested new counsel. A Magistrate Judge held an *in camera* hearing at which Davila and his attorney, but no representative of the United States, appeared. At the hearing, the Magistrate Judge told Davila that he would not get another court-appointed attorney and that his best course, given the strength of the Government's case, was to plead guilty. More than three months later, Davila pleaded guilty to a conspiracy charge in exchange for dismissal of 33 other charges. He stated under oath before a U. S. District Judge that he had not been forced or pressured to enter the plea, and he did not mention the *in camera* hearing before the Magistrate Judge. Prior to sentencing, however, Davila moved to vacate his plea and dismiss the indictment, asserting that he had entered the plea for a "strategic" reason, *i.e.,* to force the Government to acknowledge errors in the indictment. Finding that Davila's plea had been knowing and voluntary, the District Judge denied the motion. Again, Davila said nothing of the *in camera* hearing conducted by the Magistrate Judge. On appeal, the Eleventh Circuit, following Circuit precedent, held that

the Magistrate Judge's violation of Rule 11(c)(1) required automatic vacatur of Davila's guilty plea, obviating any need to inquire whether the error was prejudicial.

*Held*: Under Rule 11(h), vacatur of the plea is not in order if the record shows no prejudice to Davila's decision to plead guilty. Pp. 7–14.

(a) Rule 11(c)(1)'s prohibition of judicial involvement in plea discussions was included in the 1974 Amendment to the Rule out of concern that a defendant might be induced to plead guilty rather than risk antagonizing the judge who would preside at trial. Rule 11(h) was added in the 1983 Amendment to make clear that Rule 11 errors are not excepted from Rule 52(a)'s harmless-error inquiry. Rule 52 also states, in subsection (b), that a "plain error that affects substantial rights may be considered even though it was not brought to the [trial] court's attention." When Rule 52(a) governs, the prosecution has the burden of showing harmlessness, but when Rule 52(b) controls, the defendant must show that the error affects substantial rights. See *United States* v. *Vonn*, 535 U. S. 55, 62.

As clarified in *Vonn* and *United States* v. *Dominguez Benitez*, 542 U. S. 74, Rule 11 error may be of the Rule 52(a) type or the Rule 52(b) kind, depending on when the error was raised. In *Vonn*, the judge who conducted the plea hearing failed to inform the defendant, as required by Rule 11(c)(3), that he would have "the right to the assistance of counsel" if he proceeded to trial. The defendant first objected to the omission on appeal. This Court held that "a silent defendant has the burden to satisfy [Rule 52(b)'s] plain-error rule." 535 U. S., at 59. In *Dominguez Benitez*, the error first raised on appeal was failure to warn the defendant, as Rule 11(c)(3)(B) instructs, that a plea could not be withdrawn even if the sentence imposed was higher than the plea-bargained sentence recommendation. The Court again held that Rule 52(b) controlled, and prescribed the standard a defendant silent until appeal must meet to show "plain error," namely, "a reasonable probability that, but for the [Rule 11] error, he would not have entered the plea." 542 U. S., at 83. Pp. 7–9.

(b) Here, the Magistrate Judge plainly violated Rule 11(c)(1) by exhorting Davila to plead guilty. Davila contends that automatic vacatur, while inappropriate for most Rule 11 violations, should attend conduct banned by Rule 11(c)(1). He distinguishes plea-colloquy omissions, *i.e.,* errors of the kind involved in *Vonn* and *Dominguez Benitez*, from pre-plea exhortations to admit guilt. The former come into play *after* a defendant has decided to plead guilty, the latter, *before* a defendant has decided to plead guilty or to stand trial. Nothing in Rule 11's text, however, indicates that the ban on judicial involvement in plea discussions, if dishonored, demands automatic vacatur without regard to case-specific circumstances. Nor does the Advisory

Committee commentary single out any Rule 11 instruction as more basic than others. And Rule 11(h), specifically designed to stop automatic vacaturs, calls for across-the-board application of the harmless-error prescription (or, absent prompt objection, the plain-error rule).

Rule 11(c)(1) was adopted as a prophylactic measure, not one impelled by the Due Process Clause or any other constitutional requirement. Thus, violation of the Rule does not belong in the highly exceptional category of structural errors—*e.g.,* denial of counsel of choice or denial of a public trial—that trigger automatic reversal because they undermine the fairness of the entire criminal proceeding. *United States* v. *Marcus*, 560 U. S. 258, ___. Instead, in assessing Rule 11 errors, a reviewing court must take account of all that transpired in the trial court. Had Davila's guilty plea followed soon after the Magistrate Judge's comments, the automatic-vacatur rule would have remained erroneous. The Court of Appeals' mistake in that regard, however, might have been inconsequential, for the Magistrate Judge's exhortations, if they immediately elicited a plea, would likely have qualified as prejudicial. Here, however, three months distanced the *in camera* meeting conducted by the Magistrate Judge from Davila's appearance before the District Judge who examined and accepted his guilty plea after an exemplary Rule 11 colloquy, at which Davila had the opportunity to raise any questions he might have about matters relating to his plea. The Court of Appeals, therefore, should not have assessed the Magistrate Judge's comments in isolation. Instead, it should have considered, in light of the full record, whether it was reasonably probable that, but for the Magistrate Judge's comments, Davila would have exercised his right to go to trial. Pp. 10–14.

(c) The Court of Appeals, having concluded that the Magistrate Judge's comments violated Rule 11(c)(1), cut off further consideration. It did not engage in a full-record assessment of the particular facts of Davila's case or the case-specific arguments raised by the parties, including the Government's assertion that Davila was not prejudiced by the Magistrate Judge's comments, and Davila's contention that the extraordinary circumstances his case presents should allow his claim to be judged under Rule 52(a)'s harmless-error standard rather than Rule 52(b)'s plain-error standard. The Court decides only that the automatic-vacatur rule is incompatible with Rule 11(h) and leaves all remaining issues to be addressed on remand. P. 14.

664 F. 3d 1355, vacated and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, BREYER, ALITO, SOTOMAYOR, and KAGAN, JJ., joined.

Syllabus

SCALIA, J., filed an opinion concurring in part and concurring in the judgment, in which THOMAS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 12–167

UNITED STATES, PETITIONER *v.* ANTHONY DAVILA

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[June 13, 2013]

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns Rule 11 of the Federal Rules of Criminal Procedure, which governs guilty pleas. Two provisions of that rule are key here. The first, Rule 11(c)(1), instructs that "[t]he court must not participate in [plea] discussions." The second, Rule 11(h), states: "A variance from the requirements of th[e] rule is harmless error if it does not affect substantial rights." Rule 52(a), which covers trial court errors generally, similarly prescribes: "Any error . . . that does not affect substantial rights must be disregarded."

Anthony Davila, respondent here, entered a guilty plea to conspiracy to defraud the United States by filing false income tax returns. He maintains that he did so because a U. S. Magistrate Judge, at a pre-plea *in camera* hearing and in flagrant violation of Rule 11(c)(1), told him his best course, given the strength of the Government's case, was to plead guilty. Three months later, Davila entered a plea on advice of counsel. The hearing on Davila's plea, conducted by a U. S. District Judge, complied in all respects with Rule 11.

The question presented is whether, as the Court of

Appeals for the Eleventh Circuit held, the violation of Rule 11(c)(1) by the Magistrate Judge warranted automatic vacatur of Davila's guilty plea. We hold that Rule 11(h) controls. Under the inquiry that Rule instructs, vacatur of the plea is not in order if the record shows no prejudice to Davila's decision to plead guilty.

I

In May 2009, a federal grand jury in the Southern District of Georgia returned a 34-count indictment against respondent Anthony Davila. The indictment charged that Davila filed over 120 falsified tax returns, receiving over $423,000 from the United States Treasury as a result of his fraudulent scheme.

In January 2010, Davila sent a letter to the District Court expressing dissatisfaction with his court-appointed attorney and requesting new counsel. His attorney, Davila complained, offered no defensive strategy, "'never mentioned a defense at all,'" but simply advised that he plead guilty.[1] In response to Davila's letter, a U. S. Magistrate Judge held an *in camera* hearing at which Davila and his attorney, but no representative of the United States, appeared. At the start of the hearing, the Magistrate Judge told Davila that he was free to represent himself, but would not get another court-appointed attorney. See App. 148.

Addressing Davila's complaint that his attorney had advised him to plead guilty, the Magistrate Judge told Davila that "oftentimes . . . that is the best advice a lawyer can give his client." *Id.*, at 152. "In view of whatever the Government's evidence in a case might be," the judge continued,

"it might be a good idea for the Defendant to accept

----

[1] See Brief for Appellee in No. 10–15319–I (CA11), p. 3 (quoting Record (Exh. B)).

responsibility for his criminal conduct[,] to plead guilty[,] and go to sentencing with the best arguments . . . still available [without] wasting the Court's time, [and] causing the Government to have to spend a bunch of money empanelling a jury to try an open and shut case." *Ibid.*

As to Davila's objection that his attorney had given him no options other than pleading guilty, the Magistrate Judge commented: "[T]here may not be a viable defense to these charges." *Id.*, at 155. The judge then urged Davila to cooperate in order to gain a downward departure from the sentence indicated by the Federal Sentencing Guidelines. "[T]ry to understand," he counseled,

"the Government, they have all of the marbles in this situation and they can file that . . . motion for [a] downward departure from the guidelines if they want to, you know, and the rules are constructed so that nobody can force them to file that [motion] for you. The only thing at your disposal that is entirely up to you is the two or three level reduction for acceptance of responsibility. That means you've got to go to the cross. You've got to tell the probation officer everything you did in this case regardless of how bad it makes you appear to be because that is the way you get that three-level reduction for acceptance, and believe me, Mr. Davila, someone with your criminal history needs a three-level reduction for acceptance." *Id.*, at 159–160.

Davila's Sentencing Guidelines range, the Magistrate Judge said, would "probably [be] pretty bad because [his] criminal history score would be so high." *Id.*, at 160. To reduce his sentencing exposure, the Magistrate Judge suggested, Davila could "cooperate with the Government in this or in other cases." *Ibid.* As the hearing concluded, the judge again cautioned that "to get the [sentence] re-

duction for acceptance [of responsibility]," Davila had to "come to the cross":

"[T]hat two- or three-level reduction for acceptance is something that you have the key to and you can en-sure that you get that reduction in sentence simply by virtue of being forthcoming and not trying to make yourself look like you really didn't know what was go-ing on. . . . You've got to go [to the cross] and you've got to tell it all, Brother, and convince that probation officer that you are being as open and honest with him as you can possibly be because then he will go to the [D]istrict [J]udge and he will say, you know, that Davila guy, he's got a long criminal history but when we were in there talking about this case he gave it all up so give him the two-level, give him the three-level reduction." *Id.,* at 160–161.

Nearly a month after the *in camera* hearing, Davila filed a motion demanding a speedy trial. The District Court set a trial date for April 2010, which was continued at the Government's request.

In May 2010, more than three months after the hearing before the Magistrate Judge, Davila agreed to plead guilty to the conspiracy charge in exchange for dismissal of the other 33 counts charged in the indictment. Davila entered his guilty plea before a U. S. District Judge six days later. Under oath, Davila stated that he had not been forced or pressured to plead guilty. *Id.,* at 122. Davila did not mention the *in camera* hearing before the Magistrate Judge, and the record does not indicate whether the Dis-trict Judge was aware that the pre-plea hearing had taken place. See *id.,* at 82–99, 115–125.

Before he was sentenced, Davila moved to vacate his plea and to dismiss the indictment. The reason for his plea, Davila asserted, was "strategic." *Id.,* at 58. Aware that the prosecutor had a duty to disclose all information

relevant to the court's determination whether to accept the plea bargain, he stated that his purpose in entering the plea was to force the Government to acknowledge timeframe errors made in the indictment. *Id.,* at 58–59. By pleading guilty, Davila said, he would make the court aware that the prosecution was "vindictive." *Id.,* at 59.

The District Judge denied Davila's motion. In so ruling, the court observed that, at the plea hearing, Davila had affirmed that he was under no "pressure, threats, or promises, other than promises [made] by the government in the plea agreement." *Id.,* at 70. Furthermore, he had been fully advised of his rights and the consequences of his plea. *Id.,* at 71. It was therefore clear to the District Judge, who had himself presided at the plea hearing, that Davila's guilty plea "was knowing and voluntary." *Id.,* at 72. In view of Davila's extensive criminal history, the court sentenced him to a prison term of 115 months. *Id.,* at 75–77. Again, neither Davila nor the court mentioned the *in camera* hearing conducted by the Magistrate Judge. *Id.,* at 55–80.

On appeal, Davila's court-appointed attorney sought leave to withdraw from the case, asserting, in a brief filed pursuant to *Anders* v. *California*, 386 U. S. 738 (1967), that there were no issues of arguable merit to be raised on Davila's behalf. The Eleventh Circuit denied counsel's motion without prejudice to renewal. App. to Pet. for Cert. 6a–8a. It did so based on a discovery the appeals court made upon "independent review" of the record. That review "revealed an irregularity in the statements of a magistrate judge, made during a hearing prior to Davila's plea, which appeared to urge [him] to cooperate and be candid about his criminal conduct to obtain favorable sentencing consequences." *Id.,* at 7a. The court requested counsel to address whether the "irregularity" constituted reversible error under Federal Rule of Criminal Procedure 11(c)(1). *Id.,* at 7a–8a.

Following the court's instruction, counsel filed a brief arguing that Davila's plea should be set aside due to the Magistrate Judge's comments. In response, the Government conceded that those comments violated Rule 11(c)(1). Even so, the Government urged, given the three-month gap between the comments and the plea, and the fact that a different judge presided over Davila's plea and sentencing hearings, no adverse effect on Davila's substantial rights could be demonstrated. Pursuant to Circuit precedent, the appeals court held that the Rule 11(c)(1) violation required automatic vacatur of Davila's guilty plea. Under the Circuit's "bright line rule," the court explained, there was no need to inquire whether the error was, in fact, prejudicial. 664 F. 3d 1355, 1359 (CA11 2011) (*per curiam*).

We granted certiorari to resolve a Circuit conflict concerning the consequences of a Rule 11(c)(1) violation. 568 U. S. ___ (2013).[2]

———————

[2] Compare *United States* v. *Bradley*, 455 F. 3d 453, 461 (CA4 2006) (Rule 11(c) errors are not structural and are subject to plain-error review); *United States* v. *Pagan-Ortega*, 372 F. 3d 22, 27–28 (CA1 2004) ("[A] facially appealing claim of improper judicial participation in a plea proceeding prior to its solemnization in writing did not, on close analysis, demonstrate a basic unfairness and lack of integrity in the proceeding."); *United States* v. *Ebel*, 299 F. 3d 187, 191 (CA3 2002) ("[W]hen Rule 11 error has been committed in the taking of a guilty plea, we can consider the record as a whole to determine whether, under Rule 11(h), [the defendant's] substantial rights were affected."); *United States* v. *Kraus*, 137 F. 3d 447, 457–458 (CA7 1998) (applying harmless-error review); and *United States* v. *Miles*, 10 F. 3d 1135, 1140–1141 (CA5 1993) ("Rule 11(h) . . . compel[s] harmless error review."), with 664 F. 3d 1355 (CA11 2011) (this case); *United States* v. *Anderson*, 993 F. 2d 1435, 1438–1439 (CA9 1993) ("Rule 11's ban [on judicial involvement in plea negotiations is] an absolute command which admits of no exceptions." (internal quotation marks omitted)); and *United States* v. *Barrett*, 982 F. 2d 193, 196 (CA6 1992) ("This court's role is not to weigh the judge's statements to determine whether they were so oppressive as to abrogate the voluntariness of the plea.").

## II

Rule 11(c)(1)'s prohibition of judicial involvement in plea discussions was introduced as part of the 1974 Amendment to the Rule. See Advisory Committee's 1974 Note on Subd. (e)(1) of Fed. Rule Crim. Proc. 11, 18 U. S. C. App., p. 1420 (1976 ed.) (hereinafter Advisory Committee's 1974 Note).[3] As the Advisory Committee's note explains, commentators had observed, prior to the amendment, that judicial participation in plea negotiations was "common practice." *Id.,* at 1420 (citing D. Newman, Conviction: The Determination of Guilt or Innocence Without Trial 32–52, 78–104 (1966); Note, Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas, 112 U. Pa. L. Rev. 865, 891, 905 (1964)). Nonetheless, the prohibition was included out of concern that a defendant might be induced to plead guilty rather than risk displeasing the judge who would preside at trial. Advisory Committee's 1974 Note 1420. Moreover, the Advisory Committee anticipated, barring judicial involvement in plea discussions would facilitate objective assessments of the voluntariness of a defendant's plea. *Ibid.*

Added as a part of the 1983 Amendment, Rule 11(h) provides that "a variance from the requirements of [Rule 11] is harmless error if it does not affect substantial rights." Subsection (h), the Advisory Committee's note informs, "rejects the extreme sanction of automatic reversal" for Rule 11 violations and clarifies that Rule 52(a)'s harmlessness inquiry applies to plea errors. Advisory Committee's 1983 Note on Subd. (h) of Fed. Rule Crim. Proc. 11, 18 U. S. C. App., pp. 749, 751 (1988 ed.) (hereinafter Advisory Committee's 1983 Note).

The addition of subsection (h) was prompted by lower

--------

[3] As originally enacted, the prohibition of court participation in plea discussions was found in Rule 11(e)(1). See Fed. Rule Crim. Proc. 11(e)(1) (1976).

court over-readings of *McCarthy* v. *United States*, 394
U. S. 459 (1969). That decision called for vacatur of a
guilty plea accepted by the trial court without any inquiry
into the defendant's understanding of the nature of the
charge. The Advisory Committee explained that subsec-
tion (h) would deter reading *McCarthy* "as meaning that
the general harmless error provision in Rule 52(a) cannot
be utilized with respect to Rule 11 proceedings." Advisory
Committee's 1983 Note 751. Substantial compliance with
Rule 11 would remain the requirement, but the new sub-
section would guard against exalting "ceremony . . . over
substance." *Id.,* at 749.

For trial court errors generally, Rule 52(a) states that
"[a]ny error, defect, irregularity, or variance that does not
affect substantial rights must be disregarded." Rule 11(h),
as just noted, was designed to make it clear that Rule 11
errors are not excepted from that general Rule. Advisory
Committee's 1983 Note 749. Rule 52, in addition to stat-
ing the "harmless-error rule" in subsection (a), also states,
in subsection (b), the "plain-error rule," applicable when a
defendant fails to object to the error in the trial court.
Rule 52(b) states: "A plain error that affects substantial
rights may be considered even though it was not brought
to the [trial] court's attention." When Rule 52(a)'s "harmless-
error rule" governs, the prosecution bears the burden of
showing harmlessness. See *United States* v. *Vonn*, 535
U. S. 55, 62 (2002). When Rule 52(b) controls, the defend-
ant must show that the error affects substantial rights.
*Ibid*.

In two cases, *United States* v. *Vonn*, 535 U. S. 55, and
*United States* v. *Dominguez Benitez*, 542 U. S. 74 (2004),
this Court clarified that a Rule 11 error may be of the Rule
52(a) type, or it may be of the Rule 52(b) kind, depending
on when the error was raised. In *Vonn*, the judge who
conducted the plea hearing failed to inform the defendant,
as required by Rule 11, that he would have "the right to

the assistance of counsel" if he proceeded to trial. See Fed.
Rule Crim. Proc. 11(c)(3) (2000).[4]   The defendant first
objected to the omission on appeal. We addressed the
question "whether a defendant who lets Rule 11 error pass
without objection in the trial court must carry the burdens
of Rule 52(b) or whether even the silent defendant can put
the Government to the burden of proving the Rule 11 error
harmless." 535 U. S., at 58.

The Defendant in *Vonn* had urged that "importation of
[Rule 52(a)'s] harmless-error standard into Rule 11(h)
without its companion plain-error rule was meant to eli-
minate a silent defendant's burdens under . . . Rule 52(b)."
*Id.,* at 63.   This Court rejected the defendant's argu-
ment and held that "a silent defendant has the burden
to satisfy the plain-error rule." *Id.,* at 59.

In *Dominguez Benitez*, the Court addressed what the
silent defendant's burden entailed. The judge presiding at
the plea hearing in that case failed to warn the defendant,
as Rule 11(c)(3)(B) directs, that he would not be permitted
to withdraw his guilty plea even if the court did not ac-
cept the plea-bargained sentencing recommendation. 542
U. S., at 79.   As in *Vonn*, the error was first raised on
appeal. 542 U. S., at 79. This Court again held that Rule
52(b) was controlling. *Id.,* at 82. Stressing "the particular
importance of the finality of guilty pleas," *ibid.*, the Court
prescribed the standard a defendant complaining of a Rule
11 violation must meet to show "plain error": "[A] defend-
ant who seeks reversal of his conviction after a guilty plea,
on the ground that the district court committed plain error
under Rule 11, must show a reasonable probability that,
but for the error, he would not have entered the plea." *Id.,*
at 83.

_____

[4] The requirement that the judge inform the defendant that he has
"the right to be represented by counsel" is currently found in Rule
11(b)(1)(D).

### III

In Davila's case, the Government acknowledged in this Court, as it did before the Eleventh Circuit, that the Magistrate Judge violated Rule 11(c)(1) by improperly participating in plea discussions. As the excerpts from the *in camera* hearing, set out *supra,* at 2–4, show, there is no room for doubt on that score. The Magistrate Judge's repeated exhortations to Davila to "tell it all" in order to obtain a more favorable sentence, see App. 157–160, were indeed beyond the pale.

Did that misconduct in itself demand vacatur of Davila's plea, as the Eleventh Circuit held, or, as the Government urges, must a reviewing court consider all that transpired in the trial court in order to assess the impact of the error on the defendant's decision to plead guilty? We hold that the latter inquiry is the one the Rules and our precedent require.

Davila contends that automatic vacatur, while inappropriate for most Rule 11 violations, should attend conduct banned by Rule 11(c)(1). He distinguishes plea-colloquy omissions, *i.e.,* errors of the kind involved in *Vonn* and *Dominguez Benitez*, from pre-plea exhortations to admit guilt. Plea-colloquy requirements come into play *after* a defendant has agreed to plead guilty. The advice and questions now specified in Rules 11(b) and 11(c)(3)(B), Davila observes, are designed to ensure that a defendant's plea is fully informed and intelligently made. Errors or omissions in following Rule 11's plea-colloquy instructions, Davila recognizes, are properly typed procedural, and are therefore properly assessed under the harmless-error instruction of Rule 11(h).

Rule 11(c)(1)'s prohibition on judicial participation in plea discussions, in contrast, becomes operative *before* a defendant has decided whether to plead guilty or to stand trial. The Rule serves a more basic purpose, Davila urges, one "central to the proper functioning of the criminal

process." Brief for Respondent 18. Therefore, "the reme-dial analysis that applies to violations of . . . procedural provisions does not and should not apply to th[is] distinct class of error." *Id.,* at 16. Violations of Rule 11(c)(1), Davila elaborates, heighten the risk that a defendant's plea will be coerced or pressured, and not genuinely an exercise of free will. When a judge conveys his belief that pleading guilty would be to a defendant's advantage, Davila adds, the judge becomes, in effect, a second prose-cutor, depriving the defendant of the impartial arbiter to which he is entitled. "Rule 11(c)(1)'s bright-line prohibi-tion on judicial exhortations to plead guilty," Davila con-cludes, is "no mere procedural technicality," *id.,* at 21, for such exhortations inevitably and incurably infect the ensuing pretrial process. *Id.,* at 43.

Nothing in Rule 11's text, however, indicates that the ban on judicial involvement in plea discussions, if dishon-ored, demands automatic vacatur of the plea without regard to case-specific circumstances. The prohibition appears in subsection (c), headed "Plea Agreement Proce-dure." See Fed. Rule Crim. Proc. 11(c). That subsection affirms that the prosecution and defense attorney (or the defendant when proceeding *pro se*) "may discuss and reach a plea agreement." Rule 11(c)(1). Further, Rule 11(c) describes permissible types of plea agreements, see Rule 11(c)(1)(A)–(C), and addresses the court's consideration, acceptance, or rejection of a proffered agreement, see Rule 11(c)(3)–(5).

In recommending the disallowance of judicial participa-tion in plea negotiations now contained in subsection (c)(1), the Advisory Committee stressed that a defendant might be induced to plead guilty to avoid antagonizing the judge who would preside at trial. See Advisory Commit-tee's 1974 Note 1420. But the Committee nowhere sug-gested that violation of Rule 11(c)(1) is necessarily an error graver than, for example, the error in *Dominguez*

*Benitez*, *i.e.*, the failure to tell a defendant that the plea would bind him even if the sentence imposed significantly exceeded in length the term of years stated in the plea bargain. As earlier noted, see *supra,* at 7, the Committee pointed to commentary describing judicial engagement in plea bargaining as a once "common practice,"[5] and it observed that, in particular cases, questions may arise "[a]s to what . . . constitute[s] 'participation.'" Advisory Committee's 1974 Note 1420.

In short, neither Rule 11 itself, nor the Advisory Committee's commentary on the Rule singles out any instruction as more basic than others. And Rule 11(h), specifically designed to stop automatic vacaturs, calls for across-the-board application of the harmless-error prescription (or, absent prompt objection, the plain-error rule). See *supra,* at 7–8.

Rule 11(c)(1) was adopted as a prophylactic measure, see *supra,* at 7, not one impelled by the Due Process Clause or any other constitutional requirement. See 664 F. 3d, at 1359 (recognizing that Rule 11(c)(1) is part of a "prophylactic scheme"). We have characterized as "structural" "a very limited class of errors" that trigger automatic reversal because they undermine the fairness of a criminal proceeding as a whole. *United States* v. *Marcus*, 560 U. S. 258, ___ (2010) (slip op., at 4–5) (internal quotation marks omitted). Errors of this kind include denial of counsel of choice, denial of self-representation, denial of a public trial, and failure to convey to a jury that guilt must be proved beyond a reasonable doubt. See, *e.g., United States* v. *Gonzalez-Lopez*, 548 U. S. 140, 150 (2006) (ranking "deprivation of the right to counsel of choice" as

_____

[5] For state provisions permitting at least some judicial participation in plea bargaining, see, *e.g.,* N. C. Gen. Stat. Ann. §15A–1021(a) (Lexis 2011); Idaho Crim. Rule 11(f) (2012); Vt. Rule Crim. Proc. 11 Reporter's Notes (2003 and Supp. 2012).

"'structural error'"). Rule 11(c)(1) error does not belong in that highly exceptional category. See *Neder* v. *United States*, 527 U. S. 1, 7 (1999) (structural errors are "fundamental constitutional errors that 'defy analysis by "harmless error" standards'" (quoting *Arizona* v. *Fulminante*, 499 U. S. 279, 309 (1991)).

Had Davila's guilty plea followed soon after the Magistrate Judge told Davila that pleading guilty might be "the best advice" a lawyer could give him, see App. 152, this case may not have warranted our attention. The automatic-vacatur rule would have remained erroneous, but the Court of Appeals' mistake might have been inconsequential. See Tr. of Oral Arg. 47 (Counsel for the Government acknowledged that if there is a "serious [Rule 11(c)(1)] error," and the defendant pleads guilty "right after that," the error would likely qualify as prejudicial). Our essential point is that particular facts and circumstances matter. Three months distanced the *in camera* meeting with the Magistrate Judge from Davila's appearance before the District Judge who examined and accepted his guilty plea and later sentenced him. Nothing in the record shows that the District Judge knew of the *in camera* hearing. After conducting an exemplary Rule 11 colloquy, the judge inquired: "Mr. Davila, has anyone forced or pressured you to plead guilty today?," to which Davila responded: "No, sir." App. 122. At the time of the plea hearing, there was no blending of judicial and prosecutorial functions.

Given the opportunity to raise any questions he might have about matters relating to his plea, Davila simply affirmed that he wished to plead guilty to the conspiracy count. When he later explained why he elected to plead guilty, he said nothing of the Magistrate Judge's exhortations. Instead, he called the decision "strategic," designed to get the prosecutor to correct misinformation about the conspiracy count. *Id.*, at 58–59, 61. Rather than automatically vacating Davila's guilty plea because of the Rule

11(c)(1) violation, the Court of Appeals should have considered whether it was reasonably probable that, but for the Magistrate Judge's exhortations, Davila would have exercised his right to go to trial. In answering that question, the Magistrate Judge's comments should be assessed, not in isolation, but in light of the full record.

IV

The Court of Appeals did not engage in that full-record assessment here. Rather, the court cut off consideration of the particular facts of Davila's case upon concluding that the Magistrate Judge's comments violated Rule 11(c)(1). That pretermission kept the court from reaching case-specific arguments raised by the parties, including the Government's assertion that Davila was not prejudiced by the Magistrate Judge's comments, and Davila's contention that the extraordinary circumstances his case presents should allow his claim to be judged under the harmless-error standard of Rule 52(a) rather than the plain-error standard of Rule 52(b), the rule that ordinarily attends a defendant's failure to object to a Rule 11 violation. See *supra,* at 8; 664 F. 3d, at 1358 (citing *United States* v. *Moriarty*, 429 F. 3d 1012, 1019 (CA11 2005) (*per curiam*)). Having explained why automatic vacatur of a guilty plea is incompatible with Rule 11(h), see *supra,* at 11–13 and this page, we leave all remaining issues to be addressed by the Court of Appeals on remand.

\* \* \*

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 12–167

———————

## UNITED STATES, PETITIONER *v.* ANTHONY DAVILA

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[June 13, 2013]

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, concurring in part and concurring in the judgment.

I agree with the Court that a defendant must be prejudiced by a Rule 11(c)(1) error to obtain relief. That is because the text of Federal Rule of Criminal Procedure 11(h) says exactly that, in words whose meaning is crystal clear: "Harmless error. A variance from the requirements of *this rule* is harmless error if it does not affect substantial rights." (Emphasis added.) As the Court recognizes, this rule "calls for across-the-board application of the harmless-error prescription (or, absent prompt objection, the plain-error rule)." *Ante,* at 12. That is the beginning and the end of this case. We should not rely on the notes of the Advisory Committee to unearth Rule 11's alleged design, for "[t]he Committee's view is not authoritative" and the text of the Rule conclusively resolves the question before us. See *Black* v. *United States*, 561 U. S. \_\_\_, \_\_\_ (2010) (SCALIA, J., concurring in part and concurring in judgment) (slip op., at 1).