**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4082**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOHN ADAM RILLO,

Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Jr., Chief District Judge. (1:14-cr-00341-WO-1)

Submitted: October 20, 2016          Decided: November 16, 2016

Before WILKINSON, NIEMEYER, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Cheryl D. Andrews, HOLTON LAW FIRM, PLLC, Winston-Salem, North Carolina, for Appellant. Ripley Rand, United States Attorney, Clifton Thomas Barrett, Michael Francis Joseph, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

John Rillo ("Appellant") appeals his convictions for possession of pseudoephedrine with the intent to manufacture methamphetamine and possession of firearms in furtherance of a drug trafficking crime, and his resulting sentence. Appellant claims the district court erred in, inter alia, impermissibly interfering with plea discussions and failing to depart downward in reaching his sentence. Finding no error, we affirm.

I.

On June 30, 2014, a grand jury in the Middle District of North Carolina returned a four-count indictment against Appellant, which included three counts related to the manufacture of methamphetamine, and one count involving possession of stolen firearms. On August 27, 2014, Appellant's original counsel filed a motion to withdraw from representation based on Appellant's repeatedly-expressed desire for new counsel. The district court held a hearing on the motion on September 3. During that hearing, Appellant expressed his concerns that his attorney was "openly discussing [his] case with the district attorney without [his] permission." J.A. 17.[1] He also explained that his attorney had asked Appellant if he

_____

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

would be willing to provide information about other individuals to the Government.

The district court then asked a series of questions about the concept of substantial assistance. The court asked questions such as, "During your time in custody, have you ever heard the term 'substantial assistance'?" and "Nobody in jail has ever said a word to you about cooperating . . . [w]ith the Government, substantial assistance, departure, 5K[?] You ever heard any of those?" J.A. 21-23. Appellant answered that he had heard the terms but did not know what they meant. The court then asked defense counsel, "[H]as the Government asked if [Appellant] would be interested in cooperating, or have you explored that?" to which counsel replied, "I have, Your Honor, and I've shared that with [Appellant]." Id. at 24.

The district court then pondered whether to relieve counsel of representation, stating that some of Appellant's statements conflicted with one another: for example, Appellant said he did not review discovery materials but did read a police report; and Appellant told the court "the district attorney wants to know if [I] know anything about stolen guns [or] breaking and enterings," but he nonetheless "d[id]n't know anything about substantial assistance." J.A. 18, 24. The court found his statements, especially about substantial assistance, "to be almost inherently unreliable." Id. at 24-25. The

3

Government attorney then explained he "was interested in [Appellant's] cooperation," but "apparently he's not interested in cooperating. That's fine with me. That's the end of that as far as I'm concerned." Id. at 25. But the attorney admitted he and defense counsel had "productive conversations about . . . what might be beneficial to [Appellant]." Id. at 26.

In ultimately deciding to relieve counsel of his representation, the district court stated, "It's kind of inconceivable to me because . . . I don't think I've ever seen a case where a lawyer didn't introduce questions about others related to whether or not you want to pursue substantial assistance. [N]othing makes any sense if you don't." J.A. 28. The district court ultimately granted counsel's motion to withdraw because of Appellant's "obstruction with respect to the relationship between counsel and defendant." Id.

Less than a month after that hearing, with the assistance of new counsel, Appellant pled guilty to a two-count Information charging him with possession of a List I chemical (pseudoephedrine) with the intent to manufacture methamphetamine ("Count One"); and possession of firearms in furtherance of a drug trafficking crime ("Count Two"). At the plea hearing, the district court conducted a plea colloquy during which Appellant did not attempt to withdraw his plea and did not claim he was pleading guilty under any duress or coercion. To the contrary,

4

Appellant indicated that no one had "in any way attempted to force [him] to plead guilty against [his] wishes," and he was "fully satisfied" with his new counsel's representation and advice. J.A. 58, 53.

On December 19, 2014, the district court held the sentencing hearing. The presentence report ("PSR") calculated Appellant's criminal history at category V and his total offense level at 19, for a United States Sentencing Guidelines ("Guidelines") range of 57-71 months on Count One. The PSR also indicated that Count Two carried a mandatory consecutive minimum term of five years.[2] Appellant's counsel argued for a downward departure on Count One, noting, "[T]he Court does have the authority to depart downward when a person's criminal history category overstates the seriousness of their prior criminal history activity." J.A. 80-81. She explained, "[T]he bulk of [Appellant's crimes] are traffic violations which . . . now under North Carolina State law . . . have been demoted in the seriousness of their . . . nature." Id. at 81. She also explained that Appellant's history did not match other defendants with category V criminal histories. In the end, she urged the district court to depart downward and assign Appellant

---

[2] The Government did not move for a downward adjustment of Appellant's offense level based on substantial assistance.

to a criminal history category III, which would have resulted in a Guidelines range of 37-46 months of imprisonment. The Government also advised the court it had no evidence that Appellant had been distributing methamphetamine or pseudoephedrine in the area, and Appellant's name had never been mentioned by other methamphetamine users and sellers in the area.

The district court declined to depart downward, however, explaining, "[A]lthough recognizing my authority to depart . . . I don't find that a criminal history five overstates the seriousness of [Appellant's] criminal conduct." J.A. 91. It then sentenced Appellant to 57 months of imprisonment on Count One and to a consecutive 60 months of imprisonment on Count Two.

Appellant filed a timely notice of appeal, and numerous formal and informal briefs. We focus on two of the main issues raised in these briefs: whether the district court impermissibly interfered with plea discussions in contravention of Federal Rule of Civil Procedure 11(c)(1) and United States v. Davila, 133 S. Ct. 2139 (2013); and whether it erred in declining to depart downward in sentencing Appellant.[3]

---

[3] We have considered each of the remaining issues raised by Appellant, but we find them to fall outside the scope of our review or to be without merit.

6

II.

We first address whether the district court impermissibly interfered with plea discussions in its explanation of and questions about substantial assistance during the motion-to-withdraw hearing. Because Appellant did not object to the district court's questioning at the hearing, we review his claim for plain error. See United States v. Bradley, 455 F.3d 453, 462 (4th Cir. 2006). Under the plain error standard, Appellant must show "(1) there was an error; (2) the error is plain; and (3) the error affects substantial rights. We may then exercise our discretion to correct the error if it seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. White, --- F.3d ---, 2016 WL 4717943, at *6 (4th Cir. Sept. 9, 2016) (citations and internal quotation marks omitted).

Appellant claims that by discussing "substantial assistance," the district court was "coercing [Appellant] to provide [] help [to] both his Attorney, and the Government . . . thus seeking information on other so called local cases, in their hopes that [Appellant] would cooperate." Appellant's Informal Br. 2, United States v. Rillo, No. 15-4082 (4th Cir. Feb. 13, 2015; filed Oct. 19, 2015), ECF No. 19. Appellant believes the court "instill[ed] fear in him . . . in [his] choice to plead or go to trial"; the Government "used the 'haze'

7

of coercion and fear to its[] advantage . . . to further compound [Appellant's] heightened-intimidation, to poke him to plead"; and the court and Government "act[ed] in a colluded, or concerted effort to coerce or scare [Appellant] into seeking substantial assistance." Id. at 2, 4.

The rules of criminal procedure provide, "An attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement. The court must not participate in these discussions." Fed. R. Crim. P. 11(c)(1) (emphasis supplied). "Nothing in Rule 11's text, however, indicates that the ban on judicial involvement in plea discussions, if dishonored, demands automatic vacatur of the plea without regard to case-specific circumstances." United States v. Davila, 133 S. Ct. 2139, 2148 (2013). On this point, "particular facts and circumstances matter." Id. at 2149.

In analyzing whether a court impermissibly interfered with plea discussions, we look to "judicial comments" and other indicia of involvement, such as whether the court influenced or "initiated plea discussions." Bradley, 455 F.3d at 462. We will not find reversible error unless "it was reasonably probable that, but for the [court's participation], [Appellant] would have exercised his right to go to trial." Davila, 133 S. Ct. at 2150. In answering that question, we look to the

8

court's comments "not in isolation, but in light of the full record." Id.

Taking the hearing as a whole, we fail to see how the court's comments could be construed as interference in or initiation of plea discussions. For one thing, the hearing was not a plea hearing, but a motion-to-withdraw hearing, and the court's focus remained on the quality of representation of defense counsel. Indeed, the comments about substantial assistance were not to urge Appellant to provide such assistance in contemplation of a plea, but to ascertain whether his counsel explained what it was and how it could help him. The court never told Appellant he should provide substantial assistance to the Government, or that he would get a higher sentence if he did not do so.

This case is markedly different from others where this court has found impermissible interference with the plea process. See, e.g., United States v. Braxton, 784 F.3d 240, 242 (4th Cir. 2015) (Rule 11 error where district court "repeatedly spoke in favor of the plea agreement, opining that it would be best for [the defendant] to take the government's offer and forgo trial"); United States v. Sanya, 774 F.3d 812, 816 (4th Cir. 2014) (Rule 11 error where, before plea deal had been struck, district court repeated that a plea was in the defendant's best interest, strongly suggested the defendant

9

would receive a more favorable sentence if he pled guilty, and commented on the strength of the Government's case); Bradley, 455 F.3d at 462 (Rule 11 error where the district court "initiated plea discussions, advised the Defendants that they might 'be better off pleading to the indictment,' [and] suggested that they would likely receive life sentences if they went to trial"). In fact, in the case at hand there was no plea deal even on the table; the Government admitted Appellant's lack of interest in cooperating was "the end of that." J.A. 25; cf. United States v. Bierd, 217 F.3d 15, 21 (1st Cir. 2000) (no error where the remarks of the court did not take place in the context of plea negotiation discussions, but rather, in the context of a motion for severance).

Rather, this case is more akin to situations in which the reviewing court "f[ou]nd nothing coercive about the district judge's comments." United States v. Cannady, 283 F.3d 641, 642, 645 (4th Cir. 2002) (no Rule 11 error where, after defendant and the Government had reached a plea agreement, defendant began to "reopen the negotiation process" at the plea hearing regarding his waiver of collateral review and the court stated, "I'm not going to waste time by taking a guilty plea and then having him file a 2255 . . . . [E]ither he decides to waive the 2255, or we are going to go to trial"); United States v. Telemaque, 244 F.3d 1247, 1248-49 (11th Cir. 2001) (per curiam) (no Rule 11

10

error where defendant expressed dissatisfaction with his attorney for not mentioning the possibility of sentence reduction for acceptance of responsibility, and the district court "then pointed out . . . that the offense-level reduction was up to the court and as yet undecided"); Bierd, 217 F.3d at 21 (holding that court's mention of a guilty plea and acceptance of responsibility to defense counsel was not reversible error); see also United States v. Frank, 36 F.3d 898, 903 (9th Cir. 1994) (Rule 11 "does not establish a series of traps for imperfectly articulated oral remarks.").

For these reasons, the district court did not err, let alone plainly err, in its questioning and commentary at the motion-to-withdraw hearing.

## III.

Appellant also claims the district court erred in failing to depart downward when sentencing him. However, "[a] district court's decision not to depart from the Sentencing Guidelines is not reviewable unless the court mistakenly believed that it lacked authority to depart." United States v. Allen, 491 F.3d 178, 193 (4th Cir. 2007) (internal quotation marks omitted). The sentencing transcript is clear that the district court knew it had the authority to depart, but decided not to do so. Therefore, this issue is unreviewable.

11

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.