**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 15-4436**
_____

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

MICHAEL RANKINS,

        Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Elizabeth City. Terrence W. Boyle, District Judge. (2:14-cr-00003-BO-1)

_____

Argued: October 28, 2016        Decided: January 11, 2017

_____

Before GREGORY, Chief Judge, and KEENAN and FLOYD, Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**ARGUED**: Richard Clarke Speaks, SPEAKS LAW FIRM, PC, Wilmington, North Carolina, for Appellant. Kristine L. Fritz, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF**: John Stuart Bruce, Acting United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Michael Rankins was charged with armed bank robbery and aiding and abetting. Prior to being arraigned, Rankins attended a hearing regarding a motion he had filed. During this hearing, the district court noted several times that Rankins was unlikely to reach a plea bargain in the present case because he had not done so in other cases. The court stated that Rankins's case was "open and shut" and that the trial would only take "a day or two, then he'll get life in prison." J.A. 19-20. The court also detailed the government's evidence against Rankins.

Rankins eventually signed a plea agreement and pled guilty to the charges. Rankins now asks this Court to vacate his guilty plea, arguing that the district court committed plain error by involving itself in plea negotiations in violation of Federal Rule of Criminal Procedure 11(c)(1). We agree that the court's comments constitute improper involvement in plea negotiations and were a plain error, and we therefore vacate Rankins's guilty plea.

I.

Rankins was indicted by a federal grand jury in the Eastern District of North Carolina on March 18, 2014, for one count of armed bank robbery and aiding and abetting in violation of 18

2

U.S.C. §§ 2113(a), 2113(d), and 2. Prior to being arraigned, Rankins filed a pro se Motion to Appoint New Counsel. The district court conducted a hearing on this motion on December 5, 2014.

At the beginning of the hearing, there was confusion about whether Rankins had been arraigned yet; it was eventually established that he had not. The court then noted that the government had a strong case, particularly because Rankins's accomplice had agreed to testify against him, stating, "He's going to nail him and tell everything they did together." J.A. 19. The court said that it was "an open and shut case," and then remarked:

> [Rankins has] historically gone to trial every time he has been arrested. That's his MO. So he's probably not going to break that pattern. So we'll try him in Elizabeth City. You got all your people down there, it will take us a day or two, then he'll get life in prison.

J.A. 19–20. The court then denied Rankins's motion for new counsel, explaining that Rankins seemed to be in the habit of alleging problems with his appointed counsel and would likely reject the next attorney appointed to him as well.

Later in the hearing, the court was trying to decide if it should arraign Rankins that day or at a later time. Rankins's attorney requested that they wait, because he had not yet had a chance to discuss plea options with Rankins. The court stated,

"He's taken every case that he's ever been charged with in any court to jury trial, and I don't think he's going to alter that, but I don't know any better." J.A. 28. The court went on to proclaim, "It's an easy case," and then commented on the evidence the government had against Rankins, noting that there was photographic evidence and that Rankins had been caught near the scene of the crime with the items taken from the bank. J.A. 30. Ultimately, the court decided to arraign Rankins at a later date. At the end of the hearing, Rankins stated again that he did not want his appointed attorney to represent him, and said to the court, "I don't want to plead guilty, as you know, right." J.A. 34.

An arraignment hearing was held on December 18, 2014. When asked how he wanted to plead, Rankins stated that he did not know how he was going to plead. Rankins explained that he and his attorney disagreed about his defense strategy and that therefore they had not gone over the plea matters at all. Rankins stated, "I don't know what to do." J.A. 39. He later added, "the circumstances [are] very –– to me, very unique as to how should I enter a guilty plea or not." J.A. 41. The court responded by saying Rankins was intentionally frustrating the criminal process and trying to cause delays. The court eventually entered a plea of not guilty on behalf of Rankins.

4

On March 25, 2015, Rankins signed a plea agreement under which he agreed to plead guilty to the indictment. The same day, a hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure was conducted, at which the court established that Rankins was competent and that he understood he was waiving his trial rights and his rights to appeal. Then, Rankins pled guilty. On July 10, 2015, Rankins was sentenced to 150 months in prison. On July 11, 2015, Rankins timely noted this appeal.

II.

Rankins contends that his guilty plea should be vacated due to improper judicial involvement in plea negotiations. Rankins raises this issue for the first time on appeal, so it will be reviewed for plain error. See Fed.R.Crim.P. 52(b). There are four elements in plain error analysis.

> First, there must be an error or defect . . . . Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings. Fourth and finally, [the error should only be remedied if it] seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

Puckett v. United States, 556 U.S. 129, 135 (2009) (internal citations and quotation marks omitted).

A.

Under the first two elements of the plain error analysis, Rankins must show that the district court committed an error, and that this error was plain. Rankins claims that the district court's comments during his December 5th hearing violated Federal Rule of Criminal Procedure 11(c)(1). This rule states, "An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions." Fed.R.Crim.P. 11(c)(1) (emphasis added). We have explained that this prohibition serves three important interests: "[1] it diminishes the possibility of judicial coercion of a guilty plea; [2] it protects against unfairness and partiality in the judicial process; and [3] it eliminates the misleading impression that the judge is an advocate for the agreement rather than a neutral arbiter." United States v. Bradley, 455 F.3d 453, 460 (4th Cir. 2006) (internal quotation marks omitted).

Rankins contends that the court committed error because its comments violated Rule 11(c)(1). We agree. The court clearly brought up the subject of plea bargaining and the likelihood of Rankins entering into a plea agreement. The court also commented on the strength of the government's evidence, the speed with which Rankins would be convicted, and the

6

inevitability of his receiving a life sentence -- all statements likely to induce Rankins to enter into a plea agreement. Rule 11(c)(1) prohibits judicial involvement in plea discussions. Here, the court was extensively involving itself in such discussions. This violates Rule 11(c)(1), and was an error.

The government contends that Rule 11(c) does not apply in this situation, because plea negotiations between the government and Rankins were not ongoing when the court made the comments in question. This argument is unavailing -- the fact that government-defendant negotiations were not already ongoing does not change our analysis. Rule 11(c)(1) states that the government and a defendant may participate in plea discussions, and that the court must not. Fed.R.Crim.P. 11(c)(1). If the court itself initiates plea discussions, it is clearly still participating in them. The district court's behavior falls squarely within the scope of Rule 11(c)(1)'s prohibition.

Under the plain error standard, an error must also be "plain," meaning that it "must be clear or obvious, rather than subject to reasonable dispute." Puckett, 556 U.S. at 135. Here, the error is plain. The court openly brought up plea bargaining and made a variety of harsh comments that would tend to make Rankins more likely to plead guilty. This is a clear violation of Rule 11(c)(1).

7

B.

Under the third element of the plain error test, Rankins must show that the error affected his substantial rights, meaning that he "must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." Molina-Martinez v. United States, 136 S. Ct. 1338, 1343 (2016) (internal quotations marks omitted). To show a violation of substantial rights by a Rule 11 violation, a defendant "need only demonstrate a 'reasonable probability' that he would not have pleaded guilty absent the court's comments." United States v. Sanya, 774 F.3d 812, 820 (4th Cir. 2014) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)). In assessing a defendant's showing, "particular facts and circumstances matter." United States v. Davila, 133 S. Ct. 2139, 2149 (2013). With that said, we have previously explained that "it will be rare that a clear violation of Rule 11's prohibition against judicial involvement in plea negotiations does not affect substantial rights." Bradley, 455 F.3d at 463.

The government first argues that because three months passed between the court's comments and Rankins's decision to plea, there is not a "reasonable probability" that he would not have pleaded guilty absent the court's comments. It is true that, in the past, we have considered the passage of time between judicial intervention and a defendant's guilty plea to

8

be an important factor in determining whether the above-described "reasonable probability" exists. Sanya, 774 F.3d at 818. In this case, however, Rankins and his attorney had major problems with communication up until his decision to plea. Because this may have contributed to the temporal gap in this case, we decline to place great weight on the three-month passage of time.

The government next asserts that Rankins's own comments show that he was not swayed by the court. In Sanya, we noted that the defendant's "sudden and significant shift in attitude . . . strongly suggest[ed] that his . . . change of heart was the product of the district court's urging." Id. Here, the government argues that in the time after the court's comments, Rankins made statements that suggest that the comments had not affected him. At the end of the December 5th hearing, after the court made the statements in question, Rankins stated that he did not want to plead guilty. This statement does indicate that the comments did not immediately change Rankins's mind.

Then, at the December 14th hearing, Rankins stated that he did not know how to plead and that his circumstances were "very unique." J.A. 41. The government argues that these statements also show that the court's comments did not have an effect on Rankins. However, although these statements do indicate that Rankins still did not want to plead guilty at the December 14th

9

hearing, they also show that that between December 5th and December 14th, Rankins changed from definitively wanting to plead not guilty, to feeling confused and not knowing how to plead. Thus, these statements can also be interpreted as a sign that the court's comments did have an effect on Rankins. At best, these two statements by Rankins are ambiguous, and therefore are not particularly probative as to the effect that the court's comments had on him.

Moreover, the decisive factor in this case is the egregiousness of the court's comments themselves. Common sense dictates that if the court emphasizes the strength of the government's case, and then tells a defendant that his case is "open and shut" and that he is going to receive life in prison, these statements are highly likely to cause the defendant to enter into a plea agreement to avoid trial. Such blatant commentary regarding the defendant's guilt and likelihood of conviction weighs heavily in favor of finding a "reasonable probability" that the comments here caused Rankins to agree to a plea.

In sum, Rankins did not want to plead guilty initially, was then exposed to highly inappropriate commentary by the court regarding the likelihood of conviction and a life sentence, soon after expressed confusion about what he should do, and eventually signed a plea agreement. In our view, this sequence

10

of events creates more than a "reasonable probability" that the court's statements led Rankins to plead guilty, and the government's arguments to the contrary do not convince us otherwise. The fact that Rankins did not immediately change his mind does not overcome the obvious impact that these harsh statements were likely to have on someone in Rankins's position.

C.

Finally, to prevail under the plain error standard, Rankins must also show that the error seriously affects "the fairness, integrity or public reputation of judicial proceedings." Puckett, 556 U.S. at 135 (internal quotation marks omitted). This standard is undoubtedly met. When a defendant, before he has even been arraigned, is told by the court -- the neutral arbiter -- that he will certainly be convicted and receive life in prison, the fairness, integrity, and public reputation of that proceeding are all gravely damaged. See Bradley, 455 F.3d at 460-61.

Notwithstanding the court's apparent frustration with Rankins's conduct, these comments are astonishing and wholly inappropriate. Such behavior is antithetical to the very role that the court is meant to serve, and does nothing but undermine "the fairness, integrity [and] public reputation of judicial proceedings." Puckett, 556 U.S. at 135 (internal quotation

11

marks omitted).  As a result, the fourth and final prong of the standard is met.

## III.

The district court's comments constitute plain error that cannot go uncorrected.  Accordingly, the conviction below is

<u>VACATED AND REMANDED</u>.