NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 14, 2017
Decided January 5, 2018

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-3501

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 13-CR-10122 |
| CALVIN WILLIAMS, *Defendant-Appellant*. | Michael M. Mihm, *Judge*. |

**O R D E R**

Calvin Williams pleaded guilty to conspiracy to distribute methamphetamine, 21 U.S.C. § 841(a)(1), and was sentenced to 20 years in prison in accordance with his binding plea agreement, *see* FED. R. CRIM. P. 11(c)(1)(C). Williams contends that his guilty plea was not knowing and voluntary because he was misadvised during the plea colloquy about his sentencing exposure. Williams did not preserve this argument, so the plain-error standard applies here and is decisive. Because the record does not establish that Williams was misled or confused about his sentencing exposure, the plain-error standard is not met. We therefore affirm.

## I. Background

In 2013 Williams was indicted for conspiring to distribute methamphetamine in violation of § 841(a). His minimum and maximum prison exposure depended on the drug quantity that could be attributed to him. He faced 10 years to life if the government proved that he distributed more than 500 grams of methamphetamine. 21 U.S.C. §§ 846, 841(b)(1)(A)(viii). But if the government instead proved a quantity of between 50 and 500 grams of methamphetamine, Williams faced a prison term of 5 to 40 years. §§ 846, 841(b)(1)(B)(viii). The indictment alleged that the conspiracy involved the larger amount: "more than five hundred (500) grams of a mixture and substance containing a detectable amount of methamphetamine." If convicted as charged, he faced a potential life term.

The applicable penalties increased when the government later filed a sentencing-enhancement information under 21 U.S.C. § 851 based on two prior Illinois convictions for felony drug offenses. The § 851 enhancement increased Williams's possible prison term under both subsections (b)(1)(A) and (b)(1)(B) of § 841. He faced a mandatory life term upon proof of the 500-gram quantity charged in the indictment. §§ 846, 841(b)(1)(A)(viii). His exposure dropped to 10 years to life if the government proved a quantity between 50 and 500 grams. §§ 846, 841(b)(1)(B)(viii).

The parties eventually negotiated a lock-in plea agreement under Rule 11(c)(1)(C) in which Williams would plead guilty to the charged conspiracy in exchange for withdrawal of the § 851 information and an agreed-upon prison term of 20 years. The plea agreement included a stipulation that Williams conspired to distribute more than 500 grams of methamphetamine.

At the change-of-plea hearing, the judge asked Williams if he was fully satisfied with his lawyer's advice. Williams replied, "Not fully, no, sir." The judge then recessed the proceedings and met privately with Williams and his lawyer. Williams explained that he wanted his counsel to ask the government for a *Santiago* proffer. *See United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978) (setting the standards for the admissibility of a coconspirator's hearsay statements). But his counsel had advised him that the prosecutor would "hold it against" him and withdraw the plea offer, leaving him exposed to a mandatory life sentence. Williams's attorney did not deny telling his client that he faced a mandatory life sentence without the plea agreement; he explained that he thought the discovery received from the government made a *Santiago* proffer unnecessary. With that explanation the judge concluded that Williams's concern about counsel's representation was unwarranted. The judge asked Williams if he wanted

more time to consult with his lawyer. Williams declined. He affirmed that his decision to plead guilty was "clear" and he was "ready to move forward."

The Rule 11 plea colloquy then reconvened, and the judge began by summarizing the terms of the plea agreement. When the judge mentioned the stipulated drug quantities, Williams said he did not agree that the conspiracy had involved "more than 500 grams." He insisted that the "total amount" he "probably sold" was about 300 grams and the total for the conspiracy as a whole—including the reasonably foreseeable conduct of other participants—added up to less than 500 grams. This equivocation prompted the judge to question whether the change of plea could proceed as contemplated.

The prosecutor then conferred privately with defense counsel. Following that conversation, the prosecutor informed the court as follows: "Because this is a C agreement [i.e., Rule 11(c)(1)(C)] for 20 years … , we don't really think the weight is that important." He continued: "If the [d]efendant wants to admit to 300–400 grams as opposed to 500, the [g]overnment will accept that." "That means," the prosecutor continued, "his weights, it will be a (b)(1)(B) sentencing scheme, but the end result is still the same. It's 20 years." The judge then confirmed with Williams, his counsel, and the prosecutor that without the plea agreement Williams would face a mandatory life sentence if convicted as charged. All agreed with that assessment.

The prosecutor then stated that "[t]he [g]overnment will agree with the [d]efendant that the weight was less than 500, more than 50, so we're dealing with a (b)(1)(B) sentencing scheme." Williams concurred and pleaded guilty to what the judge described as a conspiracy to distribute more than 50 but less than 500 grams of methamphetamine. The parties agreed to revise paragraphs 4 and 6 of the plea agreement to refer to subsection (b)(1)(B) instead of (b)(1)(A). In paragraph 4 the judge crossed off the "A" in "841(a)(1)(A)" and wrote in "B." And in paragraph 6 he crossed though the possible prison terms and wrote in 10 years to life with the § 851 enhancement and 5 to 40 years without it. Williams signed the revised agreement. At sentencing defense counsel asked the judge to accept the plea agreement and sentence Williams "to 20 years in prison because he was facing a mandatory minimum of life in prison otherwise." The judge imposed a sentence of 20 years in accordance with the agreement.

## II. Analysis

Williams argues that his guilty plea was not knowing and voluntary. He acknowledges that during the Rule 11 colloquy, he was correctly told that he would face a mandatory life sentence if he rejected the plea agreement and was convicted as charged in the indictment. He argues, however, that when the prosecutor said that the drug weights were not "important," he was misled into thinking that he also faced a mandatory life sentence even if he was convicted of distributing less than the 500 grams.

The parties disagree over the standard of review. Williams contends that the harmless-error standard applies because he objected to the larger drug quantity. The government responds that our review is limited to the plain-error standard because Williams did not raise any objection to the judge's Rule 11 colloquy or seek to withdraw his guilty plea. *See United States v. Vonn*, 535 U.S. 55, 58–59 (2002) (stating that a defendant "who lets Rule 11 error pass without objection in the trial court" has the burden to establish plain error).

The government is correct. Plain-error review is appropriate because Williams neither moved to withdraw his guilty plea nor lodged an objection to the judge's Rule 11 colloquy. We recognize that Williams believes he preserved this issue by insisting at the change-of-plea hearing that he distributed only 300 grams of methamphetamine and by objecting at sentencing to the probation officer's calculation of drug quantity. But his appeal challenges the Rule 11 colloquy and the voluntariness of his guilty plea; he preserved neither argument. It is "axiomatic that in order to preserve an issue for appellate review, a party must make a proper objection … that alerts the court and opposing party to the specific grounds for the objection." *United States v. Thomas*, 845 F.3d 824, 831 (7th Cir. 2017) (quotation marks and alteration omitted).

Under the plain-error standard, a defendant must show that (1) an error has occurred; (2) it was plain; (3) it affected the defendant's substantial rights; and (4) it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Pineda-Buenaventura*, 622 F.3d 761, 770 (7th Cir. 2010). In particular:

> [A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea. A defendant must thus [establish] … that the

probability of a different result is "sufficient to undermine confidence in the outcome" of the proceeding.

*United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

The record does not support Williams's claim that he was misled or confused about his sentencing exposure with or without the plea agreement. Williams focuses on the judge's failure to tell him that he faced a mandatory life sentence *only* if he was convicted of the drug quantities as charged in the indictment—i.e., more than 500 grams of methamphetamine. *See* § 841(b)(1)(A). But the record shows that Williams had a sufficient basis to understand his exposure with the plea agreement and without it.

First, when the prosecutor said that the drug quantities were not "important," he was referring only to the plea agreement, not to Williams's exposure at trial. Second, the judge's handwritten changes to the plea agreement informed Williams of his sentencing exposure under the stipulated quantities, not his exposure if convicted of the quantity charged in the indictment. Third, the court *correctly* informed Williams of the consequence of declining that plea agreement: Williams indeed faced a mandatory life sentence if he was convicted as charged in the indictment.

Accordingly, we discern no plain error. Williams cannot establish that he misunderstood his sentencing exposure, either with the plea agreement or without it. *See United States v. Davila*, 569 U.S. 597 (2013) (the reviewing court should assess the alleged error by the district court in light of the full record); *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (holding that under plain-error review, the burden is on the defendant to show that he would have pleaded not guilty but for the Rule 11 violation).

AFFIRMED.