NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 23 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

STEVEN IRVING WEISSMAN,

       Petitioner - Appellant,

v.

KEN CLARK,

       Respondent - Appellee.

No. 23-4407

D.C. No.
3:22-cv-04005-WHO

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted February 6, 2025
San Francisco, California

Before: FORREST and SANCHEZ, Circuit Judges, and EZRA, District Judge.[**]

Petitioner Steven Weissman, a California state prisoner, appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition. Because the parties are familiar with the facts, we do not recount them here.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

We review the district court's denial of a § 2254 petition de novo. *Bolin v. Davis*, 13 F.4th 797, 804 (9th Cir. 2021). However, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we defer to the last state court's reasoned decision on any claim that was adjudicated on the merits unless that decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

When reviewing claims subject to AEDPA deference, relief may be granted only if the state court's determination was objectively unreasonable. *Davis v. Ayala*, 576 U.S. 257, 268–69 (2015). To assess whether a finding is objectively unreasonable, we first "conduct an independent review of the record to determine what arguments or theories could have supported the state court's decision." *Bemore v. Chappell*, 788 F.3d 1151, 1161 (9th Cir. 2015) (alterations adopted) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). We then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a decision of the Supreme Court." *Id.* (alterations adopted) (quoting *Richter*, 562 U.S. at 102). "'[S]o long as fairminded jurists could disagree on the correctness of the state court's decision,' AEDPA precludes federal habeas relief." *Kipp v. Davis*, 971 F.3d 939, 949 (9th Cir. 2020) (quoting *Richter*, 562 U.S.

at 101). A determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). Petitioner must rebut the presumption of correctness with clear and convincing evidence. *Id.*

I. *Napue* Violation

A *Napue* violation is the knowing presentation of false testimony by the prosecution. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). The first two elements of a *Napue* claim require "that (1) the testimony (or evidence) was actually false, [and] (2) the prosecution knew or should have known that the testimony was actually false." *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc) (citation omitted). Once the first two elements are established, a new trial is warranted if the *Napue* violation is material, which occurs if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *Glossip v. Oklahoma*, 145 S. Ct. 612, 626–27 (2025). In short, this materiality standard requires "the beneficiary of [the] constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 627 (citation omitted) (alteration in original).

Here, the state court determined that although the prosecution violated *Napue*, the prosecutor's failure to correct R.A.'s false testimony was harmless with respect to counts 5, 7, 9, 12, and 13. The state court appropriately dismissed the other counts that could have been affected by R.A.'s false testimony, which either directly

3

involved R.A. or were based on similar charges of lewd acts. However, testimony of the victim-witnesses affected by counts 5, 7, 9, 12, and 13 (J.K., K.C., and T.B.) was overtly sexual in nature and unrelated to Petitioner's conduct toward R.A. A fairminded jurist could agree that proof of Petitioner's sexual intent on the counts involving K.C., T.B., and J.K. did not depend on any inference derived from R.A.'s false testimony that he had reported an incident of inappropriate contact with Petitioner before testifying about the incident at trial. Accordingly, the state court reasonably determined that the jury's verdict on counts 5, 7, 9, 12, and 13 was not attributable to R.A.'s false testimony.

## II. Juror-Debrief Challenge

When faced with allegations of improper contact between a sitting juror and an outside party, we apply a settled two-step framework. *Godoy v. Spearman*, 861 F.3d 956, 959 (9th Cir. 2017) (en banc). "At step one, [we] ask[] whether the contact was 'possibly prejudicial,' meaning it had a 'tendency' to be 'injurious to the defendant.'" *Id.* (quoting *Mattox v. United States* 146 U.S. 140, 150 (1892)). "If so, the contact is 'deemed presumptively prejudicial' and [we] proceed[] to step two, where the 'burden rests heavily upon the [state] to establish' the contact was, in fact, 'harmless.'" *Id.* (quoting *Remmer v. United States*, 347 U.S. 227, 229 (1954)). "Harmlessness in this context means 'that there is no reasonable possibility that the communication . . . influence[d] the verdict.'" *Id.* at 968 (quoting *Caliendo v.*

*Warden of Cal. Men's Colony*, 365 F.3d 691, 697 (9th Cir. 2004)) (alterations in original). "[T]he state must rebut the presumption by pointing to some evidence contrary to the evidence that established it." *Id*.

Existing Supreme Court precedent involves communication with a sitting juror, not an excused juror. But even if there was clearly established Supreme Court authority regarding a juror-debrief challenge for an excused juror, we conclude the state court was not unreasonable in holding there was no prejudice to Petitioner. The prosecutor communicated with an excused juror—who no longer had contact with the sitting jury after being excused—prior to the conclusion of the trial. The state court credited the prosecutor's testimony that his closing argument referencing a trial witness was not based on information the prosecutor might have learned from discussing the case with the excused juror, but was instead based on a question submitted to the court by a sitting juror. The state court reasonably concluded that the prosecutor overcame the rebuttable presumption of prejudice. *See Caliendo*, 365 F.3d at 696.

III. Prosecutorial Misconduct

A prosecutor's actions constitute misconduct if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). On habeas review, constitutional errors of the "trial type" warrant

relief only if they "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993) (internal quotation marks omitted). Moreover, we "must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo." *United States v. Young*, 470 U.S. 1, 12 (1985).

The state court concluded that there was no prosecutorial misconduct or ineffective assistance of defense counsel for failing to object to closing arguments by the prosecutor that emphasized defendant's lack of "heterosexual relationships." The state court reasoned, based on the evidence at trial, that the prosecutor was not referencing Petitioner's sexual orientation but rather his lack of any intimate adult relationships. At trial, the evidence established that Petitioner had lied about being married to a woman, had unsuccessfully attempted a sexual relationship with his female housekeeper, and had once asked his neighbor to pretend to be his girlfriend for a family gathering.

It "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden*, 477 U.S. at 181. Instead, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly,* 416 U.S. 643). Based on the record, the state court reasonably determined that the prosecutor's argument was not discriminatory or improper. Moreover, "absent

egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct." *Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013) (internal quotation marks and citation omitted). Therefore, we also affirm that there was no deficient performance of counsel for failure to object to the prosecutor's closing statements.

IV.    Vouching

"Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993); *accord Berger v. United* States, 295 U.S. 78, 85–88 (1935); *Young*, 470 U.S. at 7–13. Here, the prosecutor's comments came during rebuttal closing statements and were in direct response to defense counsel's arguments about him. *See Necoechea*, 986 F.2d at 1278. In addition, the jury was instructed that they should base their decision only upon the evidence and the court's instructions on the law, and the court assumed they followed those instructions. The prosecutor did not guarantee the witnesses' veracity with his own personal beliefs or opine on their credibility. Thus, the state court's holding that the prosecutor did not vouch for evidence and that counsel was not ineffective in failing to object is reasonable and not contrary to federal law.

## V. *Brady* Violation

To prevail on a *Brady* claim, Petitioner must prove that the evidence at issue is favorable to him, it was suppressed by the prosecution, and prejudice ensued. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963). To establish prejudice, a defendant must demonstrate that "there is a reasonable probability that the result of the trial would have been different if the suppressed [evidence] had been disclosed to the defense." *Strickler*, 527 U.S. at 289 (internal quotation marks omitted). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "One does not show a *Brady* violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

It is not an unreasonable application of clearly established federal law to hold that there was no prejudicial constitutional error where the prosecution failed to disclose gifts to witness T.B. The state court identified all the other impeachment evidence that Petitioner could—and did—use to contest T.B.'s accusations against him and found that the disclosure of the gifts would not have added anything to the cumulative impact of the impeachment evidence. *See Turner v. United States*, 582

U.S. 313, 327 (2017) ("With respect to the undisclosed impeachment evidence, the record shows that it was largely cumulative of impeachment evidence petitioners already had and used at trial."). The state court also found that Petitioner did not establish a selfish motive given that T.B. did not know he would receive a refurbished laptop and gift card before he testified, and T.B. did not find out about the gifts until after he finished testifying. Those factual findings are presumed correct and have not been rebutted by Petitioner with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Moreover, the state court found T.B.'s trial testimony was consistent with his prior statements, which were made before any gifts were given to him. Thus, the state court's conclusions were not so lacking in justification beyond any possibility for fairminded disagreement. *Richter*, 562 U.S. at 103.

VI.    Ineffective Assistance of Counsel

For ineffective assistance of counsel claims, Petitioner must show that counsel's performance "fell below an objective standard of reasonableness," and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "This analysis is 'doubly deferential' when, as here, a state court has decided that counsel performed adequately." *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (citation omitted).

"Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. Given that defense counsel had ample forms of impeachment evidence specifically targeting T.B.'s credibility, such as his history of lying and hallucinations, it was not an unreasonable strategic choice for counsel to forgo investigation into the juvenile theft charge. Accordingly, it was not unreasonable under or contrary to federal law for the state court to conclude that Petitioner's trial counsel did not provide him with ineffective assistance when he chose not to further investigate T.B.'s theft charge.

VII.    Multiple-Victim Sentencing Enhancement

Structural errors are "a very limited class of errors that trigger automatic reversal because they undermine the fairness of a criminal proceeding as a whole." *United States v. Davila*, 569 U.S. 597, 611 (2013) (internal quotation marks and citation omitted). Structural errors include the "denial of counsel of choice, denial of self-representation, denial of a public trial, and failure to convey to a jury that guilt must be proved beyond a reasonable doubt." *Id.* By contrast, discrete defects—such as the omission of a single element from jury instructions—are not structural because they do not "*necessarily* render a criminal trial fundamentally unfair or an

10                                                                                    23-4407

unreliable vehicle for determining guilt or innocence." *Neder v. United States*, 527 U.S. 1, 9 (1999).  And "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error."  *Washington v. Recuenco*, 548 U.S. 212, 222 (2006).  A reviewing court should ask whether any flaw in the jury instructions "had substantial and injurious effect or influence in determining the jury's verdict."  *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (citation omitted).

Here, the state court found that the trial court's failure to instruct the jury on the elements of the multiple-victim sentencing enhancement was harmless error. The state court's holding was not contrary to *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993), because the trial court did not give an erroneous reasonable doubt instruction.  Nor was the holding contrary to *Neder*, which emphasized that most instructional errors are not structural.  527 U.S. at 9.  The state court reasonably determined that the jury found beyond a reasonable doubt that Petitioner violated section 288(a) of the California Penal Code against multiple victims and did so by making the precise findings on the verdict form that CALCRIM 3181 would have instructed them to do.

VIII.    Cumulative Prejudicial Constitutional Error

"The Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process whe[n] it renders the resulting criminal trial fundamentally unfair."  *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir.

11                                              23-4407

2007) (citing *Chambers v. Mississippi*, 410 U.S. 284, 298, 302–03 (1973)). "We have granted habeas relief under the cumulative effects doctrine when there is a 'unique symmetry' of otherwise harmless errors, such that they amplify each other in relation to a key contested issue in the case." *Ybarra v. McDaniel*, 656 F.3d 984, 1001 (9th Cir. 2011) (quoting *Parle*, 505 F.3d at 933).

The state court rejected the cumulative prejudice argument because it found no significant prejudicial errors except for the *Napue* error that required the reversal of nine counts. The case against Petitioner hinged on the testimony of several children who provided similar accounts of the nature of their relationships with Petitioner, the corroborating evidence from those children telling their parents about Petitioner's attacks, and Petitioner's own admission that he had masturbated in bed with one of the children. Despite the constitutional errors, Petitioner introduced exculpatory evidence, his accusers were thoroughly examined and impeached, prosecutorial errors were subject to evidentiary hearings, and the instructional error was minor. It was thus reasonable and not contrary to federal law for the state court to conclude that no cumulative prejudicial error occurred.

**AFFIRMED.**