RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0050p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MARK J. THORNTON,

*Defendant-Appellant.*

No. 08-3349

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 05-00184-2—Walter H. Rice, District Judge.

Argued: January 13, 2010

Decided and Filed: February 10, 2010[*]

Before: MARTIN and WHITE, Circuit Judges; ZOUHARY, District Judge.[**]

_____

## COUNSEL

**ARGUED:** Kerry M. Donahue, Dublin, Ohio, for Appellant. Vipal J. Patel, ASSISTANT UNITED STATES ATTORNEY, Dayton, Ohio, for Appellee. **ON BRIEF:** Kerry M. Donahue, Dublin, Ohio, for Appellant. Vipal J. Patel, Brent G. Tabacchi, ASSISTANT UNITED STATES ATTORNEYS, Dayton, Ohio, for Appellee. Mark Thornton, Pine Knot, Kentucky, pro se.

_____

## OPINION

_____

ZOUHARY, District Judge.

_____

[*] This decision was originally issued as an "unpublished decision" filed on February 10, 2010. On February 12, 2010, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

## INTRODUCTION

A jury convicted Mark Thornton of conspiracy to possess with intent to distribute cocaine and cocaine base (Count 1), possession with intent to distribute cocaine (Count 3), and possession of a firearm in furtherance of a drug trafficking conspiracy (Count 5). Thornton, who had three prior drug convictions, was sentenced to life imprisonment on Count 1 pursuant to a mandatory minimum sentence, as well as consecutive sentences of 264 months imprisonment on Count 3 and 60 months imprisonment on Count 5. Thornton appeals his conviction and sentence, asserting a number of procedural and constitutional errors. We affirm.

## BACKGROUND

On October 12, 2005, law enforcement officers executed a search warrant for a house on Eastview Avenue in Dayton, Ohio. The warrant was based on information from confidential informants. The officers seized approximately 800 grams of powdered cocaine, numerous wrappers used to package kilogram quantities of cocaine, drug-related tools, and several firearms. The house was rented by Nirvana Martin, and Thornton was present in the house when the search occurred. Both Martin and Thornton were eventually arrested and charged with various drug offenses. Martin pled guilty; as part of his plea agreement, he agreed to testify against Thornton.

At Thornton's trial, an individual named George Cash testified that he introduced Thornton and Martin to a Mexican drug supplier in Dayton during the summer of 2005. Martin testified that he and Thornton pooled their money to purchase a kilogram or more of cocaine from this Mexican supplier every day for several months during the summer and fall of 2005. The two would then divide the cocaine at one of the drug houses rented by Martin, including the house on Eastview Avenue, and re-sell their respective portions. Martin also testified that he and Thornton carried firearms during their drug transactions.

## DISCUSSION

**Jury Instruction Conference**

Thornton first argues that the district court erred by excluding him from the jury instruction conference in violation of Federal Criminal Rule 43(a)(2)'s requirement that a criminal defendant be present at "every trial stage." The Government contends that a jury instruction conference falls within the exception of Rule 43(b)(3) for a "conference or hearing on a question of law," and therefore Thornton's presence was not required.

All circuits that have directly addressed this issue hold that jury instruction conferences do fall within the Rule 43(b)(3) exception. *See, e.g.*, *United States v. Rivera*, 22 F.3d 430, 438 (2d Cir. 1994) ("The content of the instructions to be given to the jury is purely a legal matter."); *United States v. Gregorio*, 497 F.2d 1253, 1259 (4th Cir. 1974), *overruled on other grounds* by *United States v. Rhodes*, 32 F.3d 867, 873 (4th Cir. 1999) ("Rule 43 does not confer on criminal defendants the right [to] attend a purely legal conference on jury instructions . . . ."); *United States v. Graves*, 669 F.2d 964, 972 (5th Cir. 1982) ("A defendant does not have a federal constitutional or statutory right to attend a conference between the trial court and counsel concerned with the purely legal matter of determining what jury instructions the trial court will issue."); *United States v. Sherman*, 321 F.2d 1337, 1339 (9th Cir. 1987) ("We hold that a hearing outside the presence of the jury concerning the selection of jury instructions is a 'conference or argument upon a question of law' . . . .").

However, we need not reach the merits of this issue here because Thornton has presented no argument that the conference resulted in erroneous jury instructions, and we find no prejudice from his exclusion. The conference was held on the record, and Thornton's attorney was present to discuss factual and legal issues relating to the instructions. There is no indication that his attorney was not fully capable of representing Thornton's interests in this regard, or that his attorney could not consult with Thornton if needed. The jury was not present, thus Thornton could not have been

prejudiced in that regard. Accordingly, even if exclusion of Thornton from the conference was error, such error was harmless. *See United States v. Harris*, 9 F.3d 493, 499 (6th Cir. 1993) (recognizing in the context of ex parte communication with the jury that "[T]he rule requiring a defendant's presence at every stage of the trial must be considered with [Federal Rule of Criminal Procedure] 52(a) . . . providing that harmless error is to be disregarded.").

**Plea Agreement of Codefendant**

Thornton next argues the Government improperly questioned his codefendant, Nirvana Martin, about the details of Martin's plea agreement. Defendant did not object at trial to this line of questioning, so we review the admission of such testimony for plain error. *See United States v. Ziddell*, 323 F.3d 412, 425 (6th Cir. 2003).

On direct examination, the Government questioned Martin about the charge to which he pled guilty, the statutory penalties and sentencing guideline range he confronted, the reason for his agreement to testify at trial, and the charges which the Government had agreed to dismiss as a result of his cooperation. The Government then questioned Martin directly about his relationship with Thornton. Several pages of Martin's plea agreement were published to the jury during the Government's direct examination. However, the district court did not admit the agreement itself as evidence.

Defense counsel did not object to the Government's questioning or publication of the plea agreement, nor did defense counsel request a limiting instruction on the permissible use of the plea agreement. Defense counsel's sole objection was to a question asking whether Martin had an understanding where the guidelines placed him in the permissible statutory range of ten years to life. On cross-examination, defense counsel also questioned Martin regarding the plea agreement, including his potential sentence. During closing argument, the Government never mentioned the plea agreement, and defense counsel mentioned it only briefly in an attempt to impugn Martin's credibility. The district court instructed the jury that "[e]vidence of . . . prior convictions was brought to your attention only as one way of helping you decide how

believable [the witnesses'] testimony was.  Do not use the evidence of the prior convictions for any other purpose."

Thornton claims two forms of prejudice from the prosecutor's questioning of Martin.  First, he argues the jury might have used Martin's guilty plea -- an admission of guilt already "accepted by the District Court" -- as direct evidence of Thornton's own guilt.  Second, Thornton argues that Martin's testimony about his own sentence may have confused the jury about the sentence Thornton was facing.  These arguments are foreclosed by circuit precedent.

We have previously ruled that "a guilty plea of a codefendant may not be received as substantive evidence of a codefendant's guilt, but may properly be considered as evidence of a witness' credibility."  *United States v. Christian*, 786 F.2d 203, 214 (6th Cir. 1986) (citing *United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981)).  Moreover, "under proper instruction, evidence of a guilty plea may be elicited by the prosecutor on direct examination so that the jury may assess the credibility of the witnesses the government asks them to believe."  *Id.*  We have explained that a plea agreement could be interpreted as either bolstering or hurting a witness' credibility, so that introduction of the entire agreement is appropriate to permit the jury "to consider fully the possible conflicting motivations underlying the witness' testimony."  *United States v. Tocco*, 200 F.3d 401, 416 (6th Cir. 2000) (quoting *United States v. Townsend*, 796 F.2d 158, 163 (6th Cir. 1986)).  In addition, "[t]he prosecutor may . . . wish to place the plea before the jury so as to blunt defense efforts at impeachment and dispel the suggestion that the government or its witness has something to hide."  *Christian*, 786 F.2d at 214.  Here, the Government relies on this last rationale in defending its use of the plea agreement during direct examination, and the legitimacy of this strategy was validated by defense counsel's efforts to undermine Martin's credibility on cross-examination.

Moreover, although "[a] guilty plea entered by a codefendant can be especially prejudicial if the plea is made in connection with a conspiracy to which the remaining defendants are charged, . . . much of this potential for prejudice is negated when the

pleading codefendant . . . testifies regarding the specific facts underlying the crimes in issue." *Christian*, 786 F.2d at 214 (citing *United States v. DeLucca*, 630 F.2d 294, 298 (5th Cir. 1980)). In this case, Martin testified directly about his relationship with Thornton and the drug-related acts in question. Thus, under the rationale of *Christian*, the potential prejudice of the conspiracy plea was "negated."

As to the risk of potential confusion about the sentence Thornton was facing, some discussion of a codefendant's potential sentence is inevitable if the Government is allowed to explore a codefendant's motivation for testifying. Furthermore, in this case, defense counsel also inquired into Martin's potential sentence, so Thornton cannot legitimately claim this information prejudiced him.

In sum, Martin's testimony about his plea agreement was permissible in order to allow the jury to fully assess his credibility. The Government did not cite the plea agreement for any improper purpose during closing argument. *See United States v. Carson*, 560 F.3d 566, 575 (6th Cir. 2009). The court gave the jury a cautionary instruction on the use of prior convictions. Under these circumstances, allowing testimony about the details of Martin's plea agreement was not error.

**Life Sentence**

Thornton next argues the district court's sentence of life imprisonment on Count 1 is grossly disproportionate to the crime committed and is thus unconstitutional under the Eighth Amendment. Thornton's sentence was imposed pursuant to 21 U.S.C. § 841(b)(1)(A), which mandates life imprisonment when a defendant has two or more prior felony drug convictions.[1] Thornton, who has three prior felony drug convictions, does not contest that he meets the statutory criteria. Rather, he challenges the constitutionality of the sentence as applied to his particular circumstances.

---

[1] "If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . . ." 21 U.S.C. § 841(b)(1)(A).

Thornton's argument is foreclosed by *United States v. Hill*, 30 F.3d 48, 50 (6th Cir. 1994), which upheld the constitutionality of a mandatory life sentence under similar facts.  In *Hill*, the defendant Hickey was a third-time offender and was convicted of a violation involving 177.8 grams of cocaine base.  In evaluating the constitutionality under the Eighth Amendment of the mandatory life sentence, the court applied the "grossly disproportionate" test announced by a plurality of the Supreme Court.  *Id.* (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).  Noting that the defendant in *Harmelin* "was convicted of simple possession and it was his first offense; while Hickey was convicted of conspiracy to distribute and it was his third offense," *Hill* held that the defendant's mandatory life sentence did not violate the Eighth Amendment.

Following *Hill*, this Circuit has continued to reject Eighth Amendment challenges to mandatory life sentences in repeat-offender drug cases.  *See, e.g.*, *United States v. Odeneal*, 517 F.3d 406, 414 (6th Cir. 2008) (upholding life sentence for defendant convicted of conspiracy to distribute and possess with intent to distribute cocaine, when the violation involved 1,088.7 grams of cocaine, 378.6 grams of cocaine base, 48.5 grams of heroin, and several kilograms of marijuana); *United States v. Caver*, 470 F.3d 220, 247 (6th Cir. 2006) (upholding life sentence for defendant convicted of conspiracy to possess with intent to distribute more than 50 grams of crack cocaine, and possession with intent to distribute 12.04 grams of crack cocaine); *United States v. Flowal*, 163 F.3d 956, 963 (6th Cir. 1988) (remanding for determination whether offense involved 5,000 grams of cocaine and noting that, if so, defendant's Eighth Amendment challenge to life sentence for third drug conviction would fail).

The circumstances of Thornton's case (including the 72 kilograms of cocaine) are in line with these cited cases.  Accordingly, there is no reason to depart from our settled precedent, and we conclude that Thornton's sentence was not unconstitutional.

### Plea Negotiations

In a supplemental brief filed *pro se*, Thornton next claims the district court violated Federal Criminal Rule 11(c)(1) by participating in plea negotiations.[2] However, because Thornton did not plead guilty and was convicted by a jury, he must show "actual prejudice" in order to be entitled to a new trial. *See United States v. Elguezabal*, 188 F.3d 509, 1999 WL 717978, at *1 (6th Cir. 1999) (unpublished table case) (quoting *United States v. Diaz*, 138 F.3d 1359, 1362 (11th Cir. 1998)) (noting that when a defendant chooses to go to trial, a Rule 11 violation "does not raise the specter of an involuntary plea"). Even if there was a Rule 11 violation, Thornton has not shown actual prejudice from such violation. Indeed, if Thornton had accepted the plea deal, his sentence would have been significantly shorter than the life sentence he is currently serving following his jury conviction.

### Search Warrant

In his *pro se* brief, Thornton also challenges the district court's pretrial ruling that Thornton had no Fourth Amendment standing to challenge the validity of the search of the Eastview Avenue house. Much of the physical evidence supporting the Government's case was seized pursuant to that warrant. Prior to trial, Thornton moved to suppress the seized evidence, arguing there was no probable cause to issue the warrant.

Following a hearing (at which Thornton offered no evidence related to Fourth Amendment standing), the district court granted Thornton's suppression motion as to cell phones and cash seized from his person, but denied the motion as to the drugs and other objects seized from the house. The district court provided two grounds for denying Thornton's motion as to the evidence found in the house. First, Thornton had no reasonable expectation of privacy in the drug house and therefore no Fourth Amendment

---

[2]Rule 11(c)(1) provides in pertinent part, "An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. *The court must not participate in these discussions.*" (Emphasis added.) *See generally United States v. Barrett*, 982 F.2d 193, 194-95 (6th Cir. 1992) (noting the "inherently coercive" nature of a court's participation in plea negotiations).

standing to challenge the validity of the warrant. He was not the owner or lessee of the house, and there was no evidence Thornton or anyone else lived at the house. Rather, the house was being used as a commercial drug distribution center. Second, even if Thornton had standing, the search warrant was supported by probable cause, because it was based on detailed information from an informant that was confirmed by law enforcement officers with recent surveillance of the house.

We decline to address Thornton's argument because he challenges only the district court's conclusion that he lacked standing to challenge the warrant; he does not address the district court's alternative holding that the warrant was supported by probable cause. Issues raised in the district court, but not on appeal, are considered abandoned and not reviewable on appeal. *United States v. McPhearson*, 469 F.3d 518, 523 (6th Cir. 2006). Therefore, any challenge to the district court's holding that there was probable cause has been waived, and there is no utility in addressing the standing issue.

### Sufficiency of Evidence

Finally, Thornton argues in his *pro se* brief there was insufficient evidence to prove his guilt on any count. This argument lacks merit. When reviewing sufficiency of the evidence, this Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Moreover, "[a]ll conflicts in the testimony are resolved in favor of the government, and every reasonable inference is drawn in its favor." *United States v. Vasquez*, 560 F.3d 461, 469 (6th Cir. 2009).

*Count 1 - Conspiracy to Distribute in Excess of Five Kilograms of Cocaine*

In order to prove a drug conspiracy, the Government must prove "(1) that an agreement to violate the drug laws existed; and (2) that each conspirator knew of, intended to join, and participated in the conspiracy." *United States v. Forrest*, 17 F.3d

916, 918 (6th Cir. 1994).  At trial, Martin testified that he and Thornton pooled their money to purchase a kilogram or more of cocaine from Mexican suppliers every day for at least two months.  Martin also testified that he and Thornton would divide up the cocaine and sell their respective portions; Thornton would sometimes sell his portion from out of his car, and sometimes from the drug houses Martin rented.  Martin's testimony was corroborated by evidence seized from one of the houses, which included not only powder cocaine and crack but also wrapping from packages of cocaine, firearms, and drug paraphernalia such as scales.  This is sufficient evidence for a rational jury to conclude that Thornton and Martin had an agreement to purchase and distribute cocaine.

*Count 3 - Possession with Intent to Distribute 500 grams of Cocaine*

To prove possession with intent to distribute, the Government must prove that Thornton exercised actual or constructive possession over the controlled substance and that he intended to distribute that substance.  21 U.S.C. § 841(a)(1).  At trial, the Government presented evidence that law enforcement officers executing the search warrant found a shoe box containing cocaine upstairs in the house; that the cocaine weighed more than 500 grams; that the box belonged to Thornton; and that Thornton often stored in such a manner the cocaine he intended to sell.  This is sufficient evidence for a rational jury to conclude that Thornton possessed and intended to distribute the cocaine.

*Count 5 - Possession of a Firearm in Furtherance of a Drug Trafficking Crime.*

To prove possession of a firearm in furtherance of a drug trafficking crime, the Government must prove (1) Thornton committed a drug trafficking crime; (2) Thornton knowingly possessed a firearm; and (3) the possession of the firearm was in furtherance of this drug trafficking crime.  *See* 18 U.S.C. § 924(c).  Law enforcement officers seized numerous firearms during the raid on the drug house used by Martin and Thornton.  In addition, Martin testified that he and Thornton carried firearms to protect themselves in the course of dealing with their suppliers.  This is sufficient evidence for a rational jury to conclude that Thornton possessed a firearm in furtherance of a drug trafficking crime.

**CONCLUSION**

For these reasons, we **AFFIRM** Thornton's conviction and sentence.