NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0539n.06

No. 12-1170

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jun 03, 2013*
DEBORAH S. HUNT, Clerk

MARQUETTE GENERAL HOSPITAL,       )
                                  )
    Plaintiff-Appellee,           )
                                  )
                                  )   ON  APPEAL  FROM  THE  UNITED
v.                                )   STATES DISTRICT COURT FOR THE
                                  )   WESTERN DISTRICT OF MICHIGAN
EXCALIBUR MEDICAL IMAGING, LLC,   )
                                  )
    Defendant-Appellant.          )

Before: BATCHELDER, Chief Circuit Judge; DAUGHTREY and ROGERS, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.  Three months after answering a breach-of-contract complaint filed by plaintiff Marquette General Hospital, the defendant, Excalibur Medical Imaging, LLC, sought leave to amend its original answer to include counterclaims alleging racial discrimination and maintenance of a hostile work environment under 42 U.S.C. § 1981.  The district court denied Excalibur's motion to amend, and the parties subsequently submitted a stipulated judgment in favor of the plaintiff hospital that nevertheless "expressly preserve[d] [the defendant's] right to appeal the Court's denial of its motion to amend its answer to add counterclaims against the Hospital."  Upon entry of judgment in favor of the hospital, Excalibur filed this appeal, challenging the propriety of the denial of the motion to amend.  For the reasons set out below, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Recognizing a need for a local provider of radiological services in the Marquette (Michigan) community, in 2008, Marquette General Hospital entered into a Radiology Service Agreement (the "service contract") with Excalibur Medical Imaging, LLC, a New Jersey company. At the same time, the two parties also executed a Line of Credit Loan Agreement (the "loan contract"), pursuant to which the hospital established a $2.6 million line of credit for Excalibur that would allow the imaging company to pay business expenses "arising in connection with the Borrower's private medical practice." It is the loan contract, and that contract only, that is the subject matter of the complaint filed in this action.

By September 2009, the hospital found it necessary to commence an investigation into the practices of Dr. Arthur Greene, the managing member of Excalibur. Before the completion of that investigation, the hospital, Excalibur, and Greene, desiring "to bring about an orderly termination of the Radiology Agreement and to settle any and all claims and disputes between them in connection with the Radiology Agreement," signed a Separation Agreement and Release. In pertinent part, paragraph 8(b) of that settlement agreement provided:

> Excalibur and Dr. Greene, including any rights Dr. Greene may hold as the Managing Member of Excalibur, hereby release and discharge [Marquette General Hospital] from any and all claims, actions, causes of action, obligations, demands, damages, liabilities, complaints, costs, attorney fees, and expenses of every kind, nature, and description, whether administrative, in law or in equity, known or unknown, suspected or unsuspected, fixed or

contingent, which Dr. Greene or Excalibur has or may have against [Marquette General Hospital] for breach of the Radiology Agreement.

The settlement agreement also specifically recognized the separate existence of the loan contract and provided that nothing in the release altered the obligation of Excalibur to continue its payments to Marquette General Hospital under that financial arrangement. Indeed, when Excalibur ceased making the required payments pursuant to the loan contract in February 2011, the hospital filed this diversity breach-of-contract complaint in May 2011, seeking payment from Excalibur in the amount of almost $1.5 million.

Excalibur filed a timely answer to the complaint in June 2011, denying the breach-of-contract allegation and raising numerous affirmative defenses, including unclean hands, estoppel, undue influence, unconscionability, impossibility, justification, unjust enrichment, prevention of performance, forced resignation, and breach by the plaintiff. No facts were asserted to support any of the defenses. Three months later, on September 19, 2011, Excalibur filed a motion for leave to amend its earlier answer to add a counterclaim against the hospital. Specifically, Excalibur sought to allege that the hospital terminated the service contract with Excalibur as a result of racial animus, in violation of the protections afforded under the provisions of 42 U.S.C. § 1981. Furthermore, the defendant attempted to assert a second counterclaim for creation of a racially hostile work environment, also in violation of 42 U.S.C. § 1981.

Specifically, the grounds alleged for Excalibur's counterclaims revolved around allegations that Dr. Greene, an African-American physician, had been subjected to unspecified obscene language and racial epithets by Dr. Christopher Mehall, an independent contractor with Marquette General Hospital. Without further elaboration, Excalibur also alleged that a Dr. Ouimette, another physician who contracted with Marquette General Hospital, "repeatedly and continually failed to respect Dr. Greene's position as department chair" and was "known to make racially offensive comments about Dr. Greene in the workplace."

The motion to amend was referred to a magistrate judge, who acknowledged that courts "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, the magistrate judge denied Excalibur's motion because "the Separation Agreement prohibits claims by Excalibur or Dr. Greene against plaintiff based upon the [service] contract, and the asserted counterclaims are unique to individuals who are not parties to this action."

The hospital then moved for summary judgment on its loan-contract claim. Despite all the affirmative defenses raised initially, Excalibur stipulated to entry of judgment in the hospital's favor but "expressly preserve[d] its right to appeal the Court's denial of its motion to amend its answer to add counterclaims against the Hospital." In light of the stipulation, the district court entered judgment in favor of the hospital and against Excalibur in the

amount of $1,520,911.56. Excalibur then filed a timely notice of appeal from that judgment and from the order denying the motion to amend its answer.

**DISCUSSION**

Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure provides that, prior to trial, a plaintiff or defendant "may amend its pleading once as a matter of course within . . . 21 days after serving it." Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave," which should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend may be denied, however, where the court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In denying the defendant's motion to amend in this case, the magistrate judge decided that the proposed counterclaims "could arguably [have] provide[d] an excuse or defense for the breach of [services] contract claim," were it not for the fact that, in the settlement agreement, Excalibur "waived all defenses or claims against the plaintiff hospital arising out of the [services contract]." On appeal, Excalibur challenges that ruling, contending that the court's interpretation of the release in the settlement agreement was too broad. Excalibur concedes that the counterclaims "do arise out of the contractual relationship of the [services contract]" but insists that "they do not arise out of a *breach* of

that agreement." (Emphasis added.) This argument puts too fine a point on the ruling by the magistrate judge – Excalibur clearly alleged by counterclaim that racial animus forced him to terminate his company's arrangement with the hospital, resulting in a breach of the services contract. Even more significant, however, is the fact that Excalibur did not challenge the magistrate judge's *alternative* ground for denying the motion to amend, *i.e.*, that "the asserted counterclaims are unique to individuals who are not parties to this action" – namely "Dr. Greene [and] the two doctors that allegedly caused the hostile racially charged work environment."

The hospital contends that by challenging only one of the bases for denial of the motion to amend, Excalibur has waived its right to appeal the ruling on the motion to amend, citing *White Oak Property Development, LLC v. Washington Township*, 606 F.3d 842, 854 (6th Cir. 2010), and *United States v. Thornton*, 609 F.3d 373, 380 (6th Cir. 2010), for the proposition that failure to challenge an alternative ground supporting a district court's ruling results in abandonment of the entire issue on appeal. In *Thornton*, for example, the defendant appealed a district court's denial of a motion to suppress evidence. The trial court had ruled the evidence admissible both because Thornton had no reasonable expectation of privacy in the house where drugs were found and because the search warrant for the house was supported by probable cause. *Thornton*, 609 F.3d at 379-80. Because Thornton challenged only the determination that he lacked standing to assert a claim under the Fourth Amendment – and not the probable-cause finding – this

court ruled that "any challenge to the district court's holding that there was probable cause has been waived, and there is no utility in addressing the standing issue." *Id.* at 380.

Not surprisingly, Excalibur offers a second interpretation of the magistrate judge's opinion that would not result in a waiver of its opportunity to appeal the denial of the motion for leave to amend. According to that argument, "the District Court did not base its decision on two alternative reasons, but rather one reason, namely that the Separation Agreement prohibits Excalibur or Dr. Greene from bringing claims against [the hospital] based upon the contract." Excalibur contends that the magistrate judge's additional discussion in his ruling regarding the nonparty status of Greene, Mehall, and Ouimette was based upon an understanding "that Dr. Greene individually has a valid claim against Drs. Mehall and Ouimette individually," but that "there was no real need to address this issue further" because "the Separation Agreement would have no effect on that action." Excalibur also theorizes that "[b]ecause there is no individual claim by Dr. Greene against Drs. Mehall and Ouimette, this is not an alternative reason for the District Court's denial of Excalibur's Motion to Amend, for which Excalibur needed to argue against in this appeal."

In the alternative, Excalibur argues in its reply brief that if it is determined that there were, in fact, two bases for the magistrate judge's decision, it should be allowed a second opportunity to address that alternate decisional ground. But, as the hospital points out, "[w]e have consistently held . . . that arguments made to us for the first time in a reply brief are waived." *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010), *cert. denied*, 132 S.Ct.

498 (2011) (citing *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir.2004)). We see no reason to depart from that rule in this case.

Moreover, the magistrate judge ruled correctly in denying the defendant's motion to amend on the ground that "the asserted counterclaims [we]re unique to individuals who are not parties to this action." As noted above, denial of a motion to amend is appropriate if the court finds that the proposed amendment would be futile. Because the counterclaims could not be maintained against the parties to this action, and the party pursuing the counterclaims – Excalibur – did not attempt to join the necessary parties under Rules 19 and 20 of the Federal Rules of Civil Procedure, allowing the amendment obviously would have been futile, as the court properly held.

## CONCLUSION

For the reasons set out above, we AFFIRM the district court's judgment.