RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0179p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

SETH D. HOOVER, aka Jason E. Hernandez, aka John E. Hernandez,

        *Defendant-Appellant.*

No. 24-4029

───────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:22-cr-00135-1—John R. Adams, District Judge.

Argued: January 30, 2026

Decided and Filed: June 24, 2026

Before: GIBBONS, LARSEN, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Benjamin R. Sorber, LAW OFFICE OF BENJAMIN R. SORBER, LLC, Akron, Ohio, for Appellant. Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** J. Reid Yoder, DICAUDO, PITCHFORD & YODER, LLC, Akron, Ohio, for Appellant. Matthew B. Kall, Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

───────────────

## OPINION

───────────────

LARSEN, Circuit Judge. A law enforcement officer stopped Seth Hoover after seeing him commit several traffic violations. The stop led to a search of Hoover's car, which revealed fentanyl and a firearm. A grand jury charged Hoover with possessing fentanyl with intent to

distribute, possessing a firearm in furtherance of drug trafficking, and being a felon in possession of a firearm. A jury convicted him on all counts. The district court sentenced Hoover to 420 months' imprisonment. Hoover now appeals. For the reasons stated, we AFFIRM.

I.

In 2021, Sergeant Christian Perrin of the Ohio Highway Patrol stopped Seth Hoover for driving the wrong way down a road and making an illegal turn. After approaching the car, Perrin noticed a torch lighter and what appeared to be marijuana wrappers in a bag on the lap of the front-seat passenger. When asked for his license, Hoover gave Perrin a South Carolina learner's permit with the name "John Edwin Hernandez."[1] Perrin thought that the picture on the permit didn't resemble Hoover. The person in the picture was heavy, while Hoover looked emaciated; the person in the picture had hazel eyes and a darker complexion, while Hoover had blue eyes and a fair complexion. Perrin had Hoover accompany him to the patrol car for a closer look.

For Perrin to drive legally on the out-of-state learner's permit, he had to have a licensed driver over the age of 21 in the passenger seat of the car who was not intoxicated. Perrin returned to the car to question the passenger, Gina Long. Long said that she didn't have a valid license but provided her name and date of birth. Perrin returned to his patrol car. After running Long's information, Perrin determined that Long did, in fact, have a valid driver's license. Perrin also ran a search based on Hoover's social security number, which returned a picture of Hoover that more closely resembled his appearance.

When Perrin returned to Hoover's vehicle, Long explained that she had misunderstood Perrin's question and confirmed that she did have a valid driver's license. Based on the lighter and marijuana wrappers he had observed when initially approaching the vehicle, Perrin asked Long whether there were drugs in the car and whether she used drugs. During Long's response, Perrin observed a gun in the driver's side of the car. Perrin seized the gun and searched the car, which revealed suspected fentanyl and other drug packaging materials.

---

[1]It turns out that Hoover has multiple aliases: John Hernandez, Seth Douglass Hoover, Seth Douglas Hover, Seth D. Hoover, Jason E. Hernandez, John E. Hernandez, and John Edwin Hernandez.

A federal grand jury indicted Hoover in March 2022 for possessing fentanyl with intent to distribute and possessing a firearm in furtherance of drug trafficking.  Hoover pleaded not guilty at the arraignment, but a few months later, he told the court that he wished to plead guilty.  Yet at the start of the change-of-plea hearing, defense counsel alerted the court that Hoover had changed his mind about pleading guilty; he instead wished to terminate counsel's services because counsel refused to file a motion to suppress.  Hoover confirmed this to be accurate.  The court then said on the record:

> And we will make sure—Chris [the courtroom deputy], make sure we note that we did have a plea hearing.  The defendant—and so when it comes time to think about—if, if we get to that point, that we make sure I'm advised there's no acceptance of responsibility here.  And so it's clear that we do not—I just want to make sure I make a note so I don't forget since we were led to believe there would be a plea.  There's not going to be a plea.  That's fine, too.

R. 52, Hearing Tr., PageID 204.

The court subsequently appointed new counsel.  At the close of a status conference with new counsel, the court stated, "I'm not accepting any last-minute pleas, no acceptance of responsibility, none of those things.  Be prepared for trial, period."  R. 151, Pretrial Tr., PageID 1805.

About a month later, in October 2022, a grand jury returned a superseding indictment, which added a count of felon in possession of a firearm.  During a subsequent pretrial hearing, the court and new counsel discussed whether Hoover was ready to proceed to trial.  At the hearing, the court stated:

> So the defendant has already rejected a plea, so counsel, I'll just tell you now, if there is going to be any further plea negotiations, there will not be acceptance of responsibility.
>
> I think he may be a career offender.  You are his second counsel.  That's certainly fine.  But don't—I would just caution both sides, don't negotiate any plea that might contemplate any acceptance at all based upon the timing and the issues in the case because I will not award it.

R. 134, Hearing Tr., PageID 1110.

Hoover then moved to suppress the drugs and firearm seized from the car, arguing that the officer impermissibly extended the stop.  Before the hearing on the motion, Hoover again moved for appointment of new counsel; the court granted the motion, allowed second counsel to withdraw, and appointed a third to represent Hoover.  After an evidentiary hearing, the district court denied the motion to suppress.

After the suppression ruling, Hoover moved to continue the trial date to give his new counsel more time to prepare.  The court denied the motion.  Then, Hoover moved for a telephone conference, asking the court "to discuss issues related to [his] potential plea."  R. 56, Mot., PageID 235.  The court denied this motion as well, stating that it was "not permitted to involve itself in plea negotiations."  R. 59, Order, PageID 248.  Hoover next requested a final pretrial hearing.  The court denied that motion too.  Undeterred, Hoover's third attorney filed a motion asking for clarification of the court's prior statements regarding acceptance of responsibility:

> Counsel for Mr. Hoover was not counsel at the time and was not present at the Hearing.  Counsel has reviewed a copy of the transcripts, but upon review, it is unclear whether the Court made that finding of not accepting responsibility points because Mr. Hoover was not pleading at that time or whether the Court would not be willing to accept responsibility points at any later date, if Mr. Hoover chose to plead.  Further, Defendant has expressed a willingness to plead and has negotiated a resolution with the Government.  The only concern is Counsel for the Defendant is not able to advise Defendant of the position that the Court will take on acceptance of responsibility.  Both the Government and the Defendant believe that he has fully accepted responsibility and will continue to do so during his [Presentence] Investigation Interview and thereafter.  Defendant is unable to plead without understanding the Court's previous entry and whether the Court is still inclined to allow or grant him acceptance of responsibility.

R. 64, Mot., PageID 307.  The court didn't rule on the motion at the time.

Shortly before trial, at a jury questionnaire hearing, the government offered for the record a proposed plea agreement that Hoover had previously rejected.  When asked, Hoover indicated that while he admitted responsibility, he would not accept the proposed agreement.  Under that plea agreement, Hoover would have pleaded guilty as charged, and the government would have recommended a three-level reduction for acceptance of responsibility.

After the jury had been selected, defense counsel explained to the court that Hoover had instructed him "not to provide a defense for him or to question the [witnesses] or to acknowledge or to dispute any of the facts of the case." R. 147, Trial Tr., PageID 1581. Instead, Hoover would proceed with trial to "preserve all of his appellate issues." *Id.* Counsel then listed several issues, including the court's ruling on the motion to suppress, the constitutionality of the felon-in-possession statute, and "the issue of the denial of the three points for acceptance of responsibility back in 2022 before" he became counsel of record. *Id.* at 1582. Counsel also stated, "[W]hat Mr. Hoover believes is that some of the statements that this court has made in the past with the denial of the three points, with the way that the court has indicated that the sentencing might go, that, in fact, he's not permitted to plea and he's been denied that right to plead, he would ask this court to recuse yourself at this point in time." *Id.* at 1582–83.

The district court responded, stating that it had never refused to accept a guilty plea, that there had been no guilty plea, and that "until a plea has been rendered or tendered, then acceptance of responsibility is a premature issue for the court to address." *Id.* at 1585. The court said it would address the other issues in writing. Defense counsel provided the following brief response:

> Judge, I would just point out that when you look at the docket on this case, you'll recall back in August of 2022, I was not the attorney of record. It's clear, and we've also requested those transcripts where the court says under no circumstances will I accept responsibility points under this case.
>
> Mr. Hoover after that period of time felt that the court would never accept a plea and would not give him the three points for acceptance, and that's the reasons why he believes he's required to go to trial today.

*Id.* at 1586. The court reiterated that it was premature for it to consider acceptance of responsibility "[a]bsent a plea, a formal plea, or offer of a plea." *Id.* at 1588–89. Hoover then had a chance to speak:

> I have not contested my acceptance or guilt since the beginning of this.
>
> The only reason I haven't taken a guilty plea is because you told me last August that you would reject any guilty pleas. I would get no acceptance of responsibility. You told the stenographer to put it on my court docket. You made it very clear that I could not plead guilty and I could not take a reasonable plea bargain on that date, and ever since then, that's been my view.

> That's the reason I am in here. We asked for a continuance. We asked for another pretrial. We asked for a teleconference in an attempt to plead. My attorney filed a motion for clarification, because I expressed to him my feelings about what was said last year on the record, and it was never ruled on, and here we are at trial.

*Id.* at 1590. After the discussion in court, the court entered a written order denying Hoover's previously filed motion for clarification.

A jury convicted Hoover on all three counts. Much of the sentencing hearing focused on the PSR's recommendation that Hoover receive a two-level reduction for acceptance of responsibility. The government opposed the reduction. Defense counsel asked for three levels instead of two. Although the court thought it was a close question, the court granted Hoover a two-level reduction and calculated the Guidelines range on the drug trafficking counts (Counts 1 and 3) at 352 to 425 months, with a consecutive 60-month sentence for the use of a firearm during drug trafficking count (Count 2). In arriving at the sentence, the court remarked on the danger posed by fentanyl, Hoover's long involvement with drug trafficking, and the fact that prior sanctions had not stopped his behavior. To that point, the court noted that phone records indicated that Hoover had continued drug trafficking while incarcerated post-arrest. After considering the rest of the § 3553(a) factors, the court indicated its intent to sentence Hoover to a below-guidelines sentence of 300 months on Counts 1 (possession of fentanyl) and 3 (felon in possession) to be served concurrently, followed by 60 months on Count 2 (possession of a firearm during drug trafficking) to be served consecutively.

Hoover's counsel then voiced Hoover's objection to the court's consideration of the jail conversations regarding drug trafficking. Hoover denied that the conversations took place, and counsel indicated that he was not aware of the defense having received evidence of them from the government. Counsel asked for a chance to review the communications and respond. The court warned that if Hoover was falsely denying participation in the drug trafficking conversations, the court might reconsider the acceptance of responsibility reduction. The court then postponed final sentencing until the issue was cleared up.

The government provided defense counsel and the court with evidence of the communications and proof that they had been provided in discovery prior to trial. The court then

held a new sentencing hearing.  After taking testimony, the court concluded that Hoover had continued his drug activity while in custody.  Because of that, the court denied Hoover a reduction for acceptance of responsibility, noting that Hoover had not voluntarily "withdraw[n] from criminal conduct or associations."  *See* U.S.S.G. § 3E1.1 App. Note 1B.  The court calculated the Guidelines range at 420 months to life and sentenced Hoover to 420 months' imprisonment on counts 1 and 3, with a 60-month sentence on count two, all to run concurrently.

The day after sentencing, the government moved to correct the sentence.  The government noted that, by statute, the 60-month sentence for Count 2 had to run consecutive to the sentences for the other counts.  After two hearings, the court explained that it had meant to impose a total sentence of 420 months, not 420 months plus 60 months consecutive.  The court ultimately imposed a sentence of 360 months for Count 1, to be served concurrently with a 120-month sentence for Count 3, followed by a 60-month sentence for Count 2, for a total of 420 months' imprisonment.  Hoover now appeals.

## II.

Hoover raises five challenges to his convictions and sentences.  We take each in turn.

## A.

Hoover first argues that the district court's statements regarding acceptance of responsibility improperly involved the court in plea negotiations, in violation of Federal Rule of Criminal Procedure 11(c)(1).  The government contends that plain error review governs this challenge because Hoover failed to raise it below.  *See United States v. Davila*, 569 U.S. 597, 607–08 (2013).  We disagree.  Although Hoover didn't specifically invoke Rule 11(c)(1) before the district court, he repeatedly sought discussion on and clarification of the court's comments regarding acceptance of responsibility.  The district court ultimately addressed and rejected Hoover's Rule 11 argument.  The issue was sufficiently preserved, and plain error review doesn't apply.

A district court "must not participate in" plea discussions.  Fed. R. Crim. P. 11(c)(1).  A "judge's role is limited to acceptance or rejection of the plea agreement after a thorough review

of the relevant factors; the judge should not participate in the plea bargaining process." *United States v. Ushery*, 785 F.3d 210, 219 (6th Cir. 2015) (citation omitted). This prohibition is "absolute[]." *Id.*; *see also In re United States*, 32 F.4th 584, 593 (6th Cir. 2022). The court's "participation in the plea-bargaining process is prohibited 'because statements and suggestions by the judge are not just one more source of information to plea negotiators; they are indications of what the judge will accept, and one can only assume that they will quickly become the focal point of further discussions.'" *Ushery*, 785 F.3d at 219 (quoting *United States v. Harrell*, 751 F.3d 1235, 1239 (11th Cir. 2014)). "Because Rule 11 means what it says, once a district court has gone beyond its role in accepting or rejecting a finalized plea agreement, Rule 11 has been violated." *In re United States*, 32 F.4th at 594 (citation modified).

The district court violated Rule 11(c)(1) when it stated clearly on the record that it would not give Hoover an acceptance-of-responsibility reduction in any plea bargain the parties negotiated. "[W]hen a district court expresses its preference for or against certain plea-bargaining terms in an unfinalized or hypothetical plea agreement, the court impermissibly participates in plea negotiations in violation of Rule 11." *Id.* at 592. Here, the district court went a step further and took an acceptance-of-responsibility adjustment off the table entirely. And it did so while recognizing that the parties might still be engaging in plea negotiations. These statements violated Rule 11(c)(1). *See id.* at 594.

"Judicial participation of any kind is 'inherently coercive.'" *Id.* at 593 (quoting *Ushery*, 785 F.3d at 219). Here, the power of the court's statements proves that point. As Hoover explained before trial, "I have not contested my acceptance or guilt since the beginning of this. The only reason I haven't taken a guilty plea is because you told me last August that you would reject any guilty pleas. I would get no acceptance of responsibility." R. 147, Trial Tr., PageID 1590. As a result, Hoover felt compelled to go to trial, if only to preserve his legal issues for appellate review.

The government counters that there was no Rule 11 violation because the court was free to set deadlines for accepting a plea, and Hoover declined to plead guilty by the date set in the court's pre-trial orders. *See United States v. Moore*, 916 F.2d 1131, 1136 n.11 (6th Cir. 1990). So when, at the change-of-plea hearing, Hoover instead elected to proceed to trial, the court's

indication that there would be no future acceptance of responsibility reduction was just the court enforcing its deadlines and "provid[ing] for efficient case planning." Appellee Br. at 50 (citing *United States v. Allen*, 53 F. App'x 367, 372 (6th Cir. 2002)). This argument works, as far as it goes. But it fails to acknowledge that plea negotiations were open again after the superseding indictment. At the final pre-trial hearing, the court demonstrated its awareness of potential plea negotiations and yet "caution[ed] both sides, don't negotiate any plea that might contemplate any acceptance at all." R. 134, Hearing Tr., PageID 1110. And when the court finally addressed Hoover's motion for clarification, the court's order seemed to contemplate that Hoover could have and should have pleaded guilty *after* the initial change-of-plea hearing if he had wanted to get the court's view on acceptance of responsibility. So, while a district court may set deadlines for accepting a plea and has wide latitude over the pretrial process, the court here made improper statements during the time that plea negotiations remained open. In so doing, the court violated Rule 11(c)(1). *In re United States*, 32 F.4th at 594.

Nonetheless, violations of Rule 11(c)(1) are subject to harmless-error review. Fed. R. Crim. P. 11(h); *see also Davila*, 569 U.S. at 610 (noting that "Rule 11(h), specifically designed to stop automatic vacaturs, calls for across-the-board application of the harmless-error prescription"). To show that a preserved Rule 11(c)(1) objection is harmless, the government must establish that the error did not affect the defendant's "substantial rights." Fed. R. Crim. P. 11(h); *Davila*, 569 U.S. at 607.

In a typical case assessing prejudice in the Rule 11 context, the defendant has entered a guilty plea. In that circumstance, courts consider whether it is reasonably probable "that, but for the error, [the defendant] would not have entered the plea" and "would have proceeded to trial." *Ushery*, 785 F.3d at 221 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). But when, as here, the defendant "did not plead guilty and was convicted by a jury," we look for a showing of "actual prejudice" before a defendant's conviction may be overturned. *United States v. Thornton*, 609 F.3d 373, 379 (6th Cir. 2010) (citation omitted); *see also United States v. Elguezabal*, 188 F.3d 509, at *1 (6th Cir. 1999) (per curiam) (unpublished table); *United States v. Diaz*, 138 F.3d 1359, 1363 (11th Cir. 1998). Courts assessing prejudice in this uncommon situation have asked whether "but for the court's alleged interference," the defendant "would

have been offered" (and would have accepted) a plea deal more favorable than the sentence he ultimately received. *Diaz*, 138 F.3d at 1363; *see also Thornton*, 609 F.3d at 379 (holding that the defendant "ha[d] not shown actual prejudice" because if he "had accepted the plea deal, his sentence would [not] have been significantly shorter" than the sentence imposed after trial).

For a trial-convicted defendant, then, the prejudice inquiry following judicial interference in plea bargaining mirrors the prejudice inquiry following ineffective assistance of counsel at the plea-bargaining stage.[2] *See generally Lafler v. Cooper*, 566 U.S. 156 (2012). In a Rule 11(c) case, the plea process breaks down due to the court's errors; in a *Lafler* case, the errors are counsel's. But in each case, the errors cause the defendant to reject a plea deal, and "[h]aving to stand trial, not choosing to waive it, is the prejudice alleged." *Id.* at 163–64.

The Supreme Court has explained how to assess prejudice following *Lafler* error. Courts should ask whether, but for the error, "there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164. We see no reason why the same standards would not govern here as well.

Applying these standards, the Rule 11 violation didn't prejudice Hoover. There is no indication that the government offered to drop any charges in exchange for Hoover's guilty plea. What the government did offer was its recommendation that the district court award an acceptance-of-responsibility adjustment. That offer was, for all practical purposes, worthless to Hoover once the court indicated that it would not award such an adjustment. Contemporaneously with his decision to go to trial, Hoover made clear that he would have pleaded guilty, had the court not taken acceptance of responsibility off the table. So the court's

---

[2]We draw an analogy to *Lafler* because it involves a situation in which the defendant is trying to obtain the benefit of a plea deal that was never finalized. The errors, of course, are different—Rule 11 violations are not constitutional, *see Davila*, 569 U.S. at 610; ineffective assistance claims are, *Lafler*, 566 U.S. at 170. *See also Dominguez Benitez*, 542 U.S. at 83 n.9 (noting the differences between Rule 11 claims and *Strickland* claims).

Rule 11 violation can fairly be said to have caused Hoover not to take the deal and instead proceed to trial, where he was convicted.

Nonetheless, the error was harmless. Even with no plea bargain in place, the district court decided to award Hoover an acceptance-of-responsibility reduction at sentencing. That Hoover ultimately was not credited with it cannot be traced to any judicial interference with plea negotiations; it was Hoover's post-conviction drug activity, and his insistence on denying it, that lost him the previously granted reduction. *See United States v. Jett*, 154 F.4th 459, 464 (6th Cir. 2025) (holding that the district court did not abuse discretion in denying acceptance of responsibility reduction where defendant smuggled drugs while in pre-trial detention and falsely denied those actions). So there would be no point in now granting Hoover the benefit of the previously offered bargain. Permitting Hoover to now plead guilty as charged with a recommendation from the government that he receive an acceptance-of-responsibility reduction would have no effect on the outcome. In light of Hoover's in-detention drug-trafficking conduct, there is no reasonable probability "that the court would have accepted" the acceptance of responsibility recommendation or that the sentence "would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164. The record as a whole, therefore, supports the conclusion that no prejudicial error occurred in this case.

Even though the district court violated Rule 11(c)(1), any error was harmless.

B.

Hoover next challenges the denial of his motion to suppress. In this context, we review the lower court's "factual findings for clear error and its legal conclusions de novo." *United States v. Santiago*, 139 F.4th 570, 573 (6th Cir. 2025) (citation omitted). "Because the court denied the motion to suppress, we consider the evidence in the light most favorable to the government." *Id.* (citation omitted).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is a seizure "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996).

Officers may stop a vehicle "based on a mere 'reasonable suspicion' that a felony has occurred or that a misdemeanor is occurring," though some of our cases suggest that probable cause is required to stop a vehicle for a civil traffic offense. *United States v. Brooks*, 987 F.3d 593, 598 (6th Cir. 2021) (citation modified). The potential distinction makes no difference here, however, because Hoover does not challenge the legality of the initial stop. Instead, Hoover argues that Officer Perrin violated the Fourth Amendment by unduly prolonging it. *See Rodriguez v. United States*, 575 U.S. 348, 354 (2015).

"Authority for [a] seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* So a lawful stop "can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a . . . ticket." *Id.* at 354–55 (citation modified).

Hoover argues that Perrin had all the information he needed to issue a traffic citation before he questioned Long the second time, so any questioning after that point violated the Fourth Amendment. And, Hoover argues, had Perrin not reapproached Long, Perrin would not have seen the gun, which, led to the warrantless search of the car and the recovery of the drugs.

The district court didn't err by denying the motion to suppress. Consider first Perrin's questions to Long regarding her license. Hoover was driving on a learner's permit, so he concedes that he needed a licensed driver in the passenger seat to supervise him. Long denied having a license but a records check determined that this was incorrect. Perrin's returning to Hoover's car to confirm that Long did have a license, despite her denial, fell within the scope of the traffic stop—determining whether Hoover was legally operating the car. Such clarification questions fell within the purpose or "mission" of the stop and thus didn't impermissibly extend its duration. *Id.* at 355 ("Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop." (citation modified)).

Next we consider Perrin's questions to Long regarding the presence of drugs in the vehicle and her drug use. Those arguably fell within the purpose of the stop too because the law required that the supervising passenger not be intoxicated. *See* Appellee Br. at 33. But we need not decide that issue because, regardless, Perrin had reasonable suspicion of unlawful activity to

briefly continue the stop to inquire about the possibility of drugs in the vehicle. *See United States v. Jordan*, 100 F.4th 714, 718–19 (6th Cir. 2024).

At the beginning of the stop, Perrin "noticed that there was a torch lighter near the center console area and a packet of blunt wrappers in a grocery bag that was sitting on the passenger's lap." R. 138, Suppression Hearing, PageID 1150. And then, when Perrin obtained Hoover's learner's permit, the picture on the permit didn't match Hoover, even after Perrin got a closer look once Hoover had exited the vehicle. Perrin testified, "[I]t just kind of threw it off a little bit . . . I'm looking at this person on this driver's license and I've got this guy here who looks completely different. And it just wasn't adding up at that time." *Id.* at 1162. And while Hoover and Perrin were in the patrol car, Perrin noticed changes in Hoover's demeanor; according to Perrin, Hoover was "kind of all over the place"—he "went from questioning to apologetic to questioning to apologetic." *Id.* at 1169.

So during the conversation about Long's license, Perrin asked a simple question regarding the presence and use of drugs. Long "gave a long answer, and she reiterated that answer. She tried to convince me of that answer by saying it several times." *Id.* at 1172. It was then that Perrin noticed the pistol. Given all that Perrin witnessed and heard, there was reasonable suspicion to briefly extend the stop to question Long regarding the possibility of drugs in the vehicle. *See Jordan*, 100 F.4th at 718–19. The district court didn't err by denying Hoover's motion to suppress.

C.

Hoover next claims that his conviction for being a felon in possession of a firearm violates the Second Amendment. We have held that "most applications" of the felon-in possession statute, 18 U.S.C. § 922(g)(1), are constitutional, so "the provision is not susceptible to a facial challenge." *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024). Recognizing this, Hoover pursues only an as-applied challenge.

Section 922(g)(1) is constitutional "as applied to dangerous people." *Id.* at 663. "[L]egislatures may disarm groups of people, like felons, whom the legislature believes to be dangerous—so long as each member of that disarmed group has an opportunity to make an

individualized showing that he himself is not actually dangerous." *Id.* Whether a defendant has shown that he is not dangerous is a "fact-specific" inquiry that "tak[es] account of the unique circumstances of the individual, including details of his specific conviction." *Id.* But courts may consider "a defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) prosecution." *Id.*

Hoover has not shown that he is not dangerous. He has several prior drug-trafficking convictions, which we have called a "prime example" of a crime that poses a significant threat to the community. *Id.* at 659. He also has prior convictions for domestic violence and assault, which are crimes against the person and "speak directly to whether an individual is dangerous." *See id.* at 658. These alone are enough to categorize Hoover as dangerous. *Id.* at 663. Because Hoover has not met his burden of proving that he is not dangerous, § 922(g) is constitutional as applied to him.

D.

Hoover next argues that the district court erred by classifying him as a career offender. We "review a district court's legal interpretation of the Guidelines de novo and its factual findings for clear error." *United States v. Jones*, 81 F.4th 591, 597 (6th Cir. 2023) (citation omitted).

Hoover is properly categorized as a career offender if (1) he "was at least eighteen years old at the time [he] committed the instant offense of conviction"; (2) "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense"; and (3) he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Hoover disputes only the third prong.

The PSR determined that Hoover was a career offender because he had been previously convicted of two controlled substances offenses—trafficking in cocaine in 2007, and trafficking in heroin in 2009. Hoover objected, claiming that these two offenses should not be "counted separately" because they were "contained in the same charging instrument," the "sentences were imposed on the same day," and the offenses were not "separated by an intervening arrest." U.S.S.G. § 4A1.2(a)(2). The district court disagreed, concluding that although the two offenses

were charged and sentenced together, Hoover had been arrested on the cocaine charge in November of 2007, and that "*subsequent* to that initial arrest, Hoover committed" the 2009 heroin offense.  R. 94, Order, PageID 899; *see United States v. Rogers*, 86 F.4th 259, 263 (6th Cir. 2023) (noting that an "intervening arrest" is one that occurs after the commission of the first offense but before the commission of the second).

Hoover does not contest the district court's ultimate conclusion that his offenses were separated by an intervening arrest.  He argues only that the district court erred by not confining itself to a limited range of documents—called *Shepard* documents—when making that determination.  *See Shepard v. United States*, 544 U.S. 13 (2005).  That argument fails.  Although the district court held an evidentiary hearing and took testimony, the court's decision explained that it didn't rely on evidence presented at the hearing to determine whether Hoover's prior offenses should be counted separately; instead, all the relevant and necessary information was contained in the indictment.  And an indictment is a permissible *Shepard* document.  *See Descamps v. United States*, 570 U.S. 254, 257 (2013).  So, even if Hoover's premise were correct, his argument necessarily fails.[3]

The court didn't err by categorizing Hoover as a career offender.

E.

Finally, Hoover argues that the district court lacked authority to resentence him because the resentencing occurred outside the 14-day window established by Federal Rule of Criminal Procedure 35(a).  We review this question de novo.  *United States v. Houston*, 529 F.3d 743, 748 (6th Cir. 2008).

On October 16, 2024, the district court sentenced Hoover to a total of 420 months' imprisonment on counts 1, 2 and 3, with the sentences to run concurrently.  The next day, the government moved to correct the sentence.  R. 118, Mot., PageID 1025.  The government noted

---

[3]Hoover does not explain why he believes that a district court must limit itself to *Shepard* documents when determining whether two prior offenses should be "counted separately" under U.S.S.G. § 4A1.2(a)(2).  He simply asserts that in the "analogous" context of the Armed Career Criminal Act, it would have been error for the district court to look beyond these documents and to enhance his sentence based on officer testimony, and an "associated police report and search warrant."  Appellant Br. at 41.

that the original sentence didn't account for the fact that the 60-month sentence for Count 2 had to run consecutively to any other sentence imposed.

The court timely convened for resentencing on October 23, 2024—seven days after imposition of the original sentence. Hoover, however, was not present, as he refused to be transported from jail to the court. The Marshals Service requested permission to use force to make Hoover attend, but the district court declined. Hoover's counsel then suggested two options: First, the court could obviate the "need to have another sentencing hearing" by just "correct[ing] th[e] error through its journal entry with Count 2, making it 60 months of consecutive time." R. 142, Hearing Tr., PageID 1392. Alternatively, counsel suggested that the court proceed with his client appearing via videoconference.

The court indicated that it would be willing to proceed via video, if Hoover would waive an in-person appearance. The court then explained that it had meant to impose a 420-month total sentence, including the mandatory consecutive sentence. It was not the court's "intention to impose 420 months plus 60 months consecutive. In essence, it would be 360 months as to Count 1, 120 months as to Count 3, both concurrent, and 60 months as to Count 2 consecutive." *Id.* at 1394. So the court explained that it would be "correcting the sentence to reflect the 60 months consecutive." *Id.* Because Hoover wasn't present, the court gave notice of its intention to correct the sentence as detailed; and the court said it would make a final ruling when Hoover appeared in person or over Zoom.

Defense counsel then proposed that the court "set a new date now, maybe a couple weeks out." *Id.* at 1396. But when the court tried to accommodate that request, counsel had a scheduling conflict for the entire week. So the court asked counsel to let it "know what week you want me to look at." *Id.* at 1397. Defense counsel proposed that they look for a date the following week—now four weeks after the original sentencing hearing. The court and counsel eventually agreed on a date—November 13.

Hoover appeared at the November 13 hearing via Zoom. Hoover himself (not counsel) argued that the court could not resentence him because the 14-day window for doing so under Federal Rule of Criminal Procedure 35(a) had lapsed. The court didn't respond to the argument

at the time; it instead sentenced Hoover as stated in the prior hearing—420 months in total, with the 60 months for Count 2 running consecutive to 360 months for the other counts. In a subsequent order, the court rejected Hoover's Rule 35(a) objection.

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). But it may do so when "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." *Id.* § 3582(c)(1)(B). Rule 35(a) permits a court, "[w]ithin 14 days after sentencing," to "correct a sentence that resulted from arithmetical, technical, or other clear error."

Hoover argues that the district court's resentencing came too late. But Hoover caused any delay and thus invited any error. *See United States v. Demmler*, 655 F.3d 451, 459 (6th Cir. 2011) ("[W]hen a party has himself provoked the court to commit an error, that party may not complain of the error on appeal unless that error would result in manifest injustice."). Hoover refused to come to court on the day of the original resentencing. Understandably, the district court declined the Marshals Service's request to use force to bring him to court. So Hoover's absence from the sentencing hearing, at which the court was ready to proceed, was his own doing. And it was defense counsel's suggestion to postpone the hearing until November 13 to accommodate his scheduling conflicts. Because Hoover invited any error in the rescheduling of his sentencing hearing, he cannot now complain that the district court erred.

\* \* \*

We AFFIRM.